## WELCH v. PAULINE OIL & GAS CO.

No. 18196. Opinion Filed June 12, 1928.

Rehearing Denied Nov. 13, 1928.

Reuben M. Roddie, for plaintiff in error.

Lydick, McPherren & Jordan, for defendant in error.

HEFNER, J. This cause grew out of a contract for the sale of oil produced from a lease in Stephens county, Okla., in which A. L. Welch, the plaintiff, and others owned seven-sixteenths of the production. On the 3rd day of March, 1924, the plaintiff and his associates entered into a written contract with the Pauline Oil & Gas Company, defendant, to sell the oil at the posted price of the Prairie Oil & Gas Company plus a premium of 25 cents per barrel. At the same time a division order was executed and delivered to the defendant, the company made a deposit with the plaintiff in the sum of $5,000 to guarantee the purchase of the oil, and by the terms of the contract was to have this money deducted from the purchase price of the oil or returned to the defendant at or before the termination of the contract.

On the 23rd day of April, a little more than a month after the execution of the contract and division order, the defendant notified the plaintiff that on and after the 25th day of April it would not pay the premium, but would pay the Prairie posted price for the oil. On May 28th, the defendant notified the plaintiff that it would not pay the Prairie posted price from and after 7 o'clock on that day, but would pay the price posted by the Magnolia Petroleum Company. The plaintiff sued the defendant to recover the difference between the posted price of the Prairie Oil & Gas Company plus the premium of 25 cents per barrel and the amount actually paid by the defendant to the plaintiff and his associates, which amount was $4,534.96.

The case was tried upon an agreed statement of facts of which the foregoing is the substance.

Upon the trial of the case, the trial judge held that the contract was subject to termination upon notice from either party thereto, and that the letters from the defendant were notice of an abandonment, and the acceptance of the pay for the oil by the plaintiff and his associates was an acquiescence in the modification of the contract, and judgment was rendered against the plaintiff and in favor of the defendant.

For reversal, the plaintiff urges that the contract in question was fully executed on the part of the plaintiff and his associates and was an executory contract on the part of the defendant, and therefore was not subject to change or modification except by writing, and that for a consideration, and that any change or modification of the contract without a new consideration was void; and that the contract, being in writing, could not be altered or changed except by a contract in writing or by an executed oral agreement.

The rule above stated by the plaintiff is a correct rule of law, but we do not think it is applicable to the sales contract in the case at bar.

One of the provisions of the division order executed by the plaintiff and those associated with him is as follows:

"The Pauline Oil & Gas Company is hereby authorized until further notice to receive

oil from said wells for purchase from said parties severally in the proportions named subject to the following conditions," etc.

This provision indicates that the contract could be terminated at any time upon notice.

On April 23, 1924, the defendant wrote the plaintiff a letter which is as follows:

"Dear Sir: Due to the demoralized condition of the refined oil market for the past 60 days, we have had to suffer a loss at our refinery. You no doubt have been aware of the condition, and I personally feel that it is, however, a more or less temporary condition. Effective at six o'clock a. m., April 25, 1924, we will discontinue all premiums on oil. We do not feel that we can pay more than the posted Prairie price for your oil. I trust that you will fully appreciate this condition and co-operate with me during this present stringency. You realize that a refinery cannot continue operation at a loss. I am informed by reliable source that all other refineries in that district have discontinued their premiums on oil. Just as soon as this market condition adjusts itself, I will be glad to renew the payment of the premiums and want to assure you that we will at all times pay you as much for your oil as any other refiner. If this is not entirely satisfactory, I will consider it a favor if you will advise the writer by phone or letter. I want you to be satisfied. Thanking you for your many past favors, I remain. * * *"

On May 28, 1924, the defendant wrote the plaintiff a second letter which is as follows:

"Dear Sir: This is to inform you that effective this date, May 28, at 7 o'clock a. m.. until further notice, we will adopt as our schedule of prices for crude oil the price as posted by the Magnolia Petroleum Company. Yours very truly. * · * *"

Under the agreed statement of facts, it is admitted that the plaintiff received both of these letters and no answer was made thereto, but after receiving them the plaintiff continued to sell the oil to the defendant and continued without any protest to receive the purchase price therefor under the schedule named in the letters. The contract was subject to abandonment, after notice, by either party, and the letters from the defendant to the plaintiff constituted an abandonment, and the acceptance of the pay for the oil was an acquiescence in the modification of the contract.

Under these facts, we think the trial court committed no error, and its judgment is affirmed.

MASON, V. C. J.. and PHELPS. LESTER. HUNT, and RILEY, JJ., concur.