[Civ. No. 16524.   Second Dist., Div. Three.   Apr. 20, 1949.]

JEAN I. GILLIS, Appellant, v. ROYALTY SERVICE CORPORATION, LTD. (a Corporation) et al., Respondents.

Faries & McDowell, C. E. McDowell, McIntyre Faries and Willard J. Stone for Appellant.

Verne E. Robinson and Harold L. Green for Respondents.

WOOD, J.—Action to quiet title to royalties, and for an accounting, under a community oil lease. Judgment was in favor of defendants, and plaintiff appeals.

Plaintiff's land, which was included in the community oil lease dated April 10, 1936, was subject to liens of street improvement bonds at the time the lease was made. The liens were foreclosed in 1937, and the owner of the street improvement bonds was the purchaser at the foreclosure sale. During 1937 and 1939, five other parcels of land, which were included in the oil lease, were also sold to satisfy street improvement bond liens. About 1944, the plaintiff acquired quitclaim deeds, and assignments of interest in the community oil lease, from the company that owned those five parcels at the time of the foreclosure sales. In 1944, plaintiff commenced this action.

Many parcels of land, other than the six involved here, were included in the oil lease. The parcel of land which plaintiff owned will be referred to herein as Parcel 1, and the five other parcels involved here will be referred to as Parcels 2, 3, 4, 5, and 6. No well was drilled on any of the six parcels. Prior to 1940, the titles to Parcels 1, 2, 3, 5, and 6 acquired by the purchasers at the foreclosure sales were transferred to defendant Fred Salter, and in 1942 the title to Parcel 4 acquired by the purchaser at the foreclosure sale was transferred to defendant Amanda Salter.

The community oil lease provided that owners of other parcels of land might join in the lease by executing counter-

parts thereof. After defendant Fred Salter had acquired the titles to said five parcels he executed a new counterpart of the community lease covering said five parcels. For a while thereafter the lessee paid royalties to Fred and Amanda Salter as colessors in the proportion which the acreage of said six parcels bore to the total acreage in the lease and then the lessee impounded the royalties, pertaining to those parcels, pending a determination as to whom such royalties should be paid. The lessee, Royalty Service Corporation, filed herein a ''Cross-complaint for Interpleader'' asking that the plaintiff and defendants Salter interplead their rights to the royalties under the lease.

The trial court found that plaintiff had no right, title or interest in the property, leases, or royalties; that plaintiff and her assignor (the company that owned the five other parcels before foreclosure) failed to perform the conditions of the lease; and that the consideration for the lease failed so far as plaintiff and her assignor were concerned. The trial court also found that defendant Fred Salter was the owner of the royalty interest under said lease, pertaining to the five parcels owned by him; and the court quieted his title to that interest.

Appellant asserts, in effect, that although the purchasers at the foreclosure sales acquired the fee title to the six parcels of land involved herein and the right to the oil produced from those parcels, they did not acquire the right of the plaintiff, under the community lease, to share in the production of oil from the land of her colessors. Stated in another way, she asserts that her right to royalties from oil produced upon parcels of land in the community lease, other than said six parcels, was not destroyed by foreclosure of the street bond liens.

As above stated, the six parcels of land were subject to the liens of street bonds at the time the lease was made. It is conceded that the purchasers at the foreclosure sales acquired the fee titles to the six parcels of land free and clear of the lease, and acquired the right to drill for and produce oil upon said six parcels. The liens of the street bonds on the six parcels were not liens upon the royalty interests, pertaining to those parcels, in the oil produced upon the other parcels in the lease. ▪ The royalty interest of a lessor under a community oil lease in the oil produced upon the land of his colessors is an estate in real property, is an incorporeal

hereditament in gross, and is separate and distinct from his royalty interest in oil which might be produced from his own land, and it can only be conveyed by specific transfer of that interest. (*Tanner* v. *Title Ins. & Trust Co.*, 20 Cal.2d 814, 820 [129 P.2d 383].) Plaintiff did not make a specific transfer, or any transfer, of that interest as to her Parcel 1, and the owners of the five other parcels did not make a specific transfer, or any transfer, of such interest in those parcels. The purchasers of the six parcels at the foreclosure sales did not acquire, through such purchases, the royalty interests of the former owners of those parcels in the oil produced upon the other parcels of land in the community lease. If the royalty interests under the community lease, which the former owners of the six parcels had immediately before the foreclosure sales, remained in existence after the foreclosure sales, the title to those interests remained in the former owners. Plaintiff was one of the former owners and subsequently acquired the remaining interest, if any, of the other former owner. Therefore, if the royalty interests which the former owners had immediately before the foreclosure sales, remained in existence after the sale, the plaintiff herein had title to them. A question therefore arises as to whether any royalty interests in the oil from other parcels in the community lease, which interests had been created by including the six parcels in the lease under the original counterparts, existed after the foreclosure sales. Plaintiff seeks, as above stated, to quiet her title to such royalty interests and to obtain an accounting by the lessee. As above stated, the court found that plaintiff as lessor of Parcel 1, and her assignor as lessor of the five other parcels, failed to perform the conditions of the lease; and that the consideration for the lease failed as to said six parcels. Paragraph 20 of the lease provides: "Lessor hereby warrants and agrees to defend the title to the land herein described . . . ." ▉ Plaintiff owned Parcel 1 which was subject to the liens of the bonds. In the foreclosure action, with respect to that parcel, she was served with summons and complaint but she defaulted, and her parcel of land was sold at foreclosure sale to the owners of the bonds. By reason of her failure to defend her title to Parcel 1, the lessee under the community lease lost its right to drill for and produce oil upon that parcel, and lost its right to use that parcel for other purposes, mentioned in the lease, which were incidental to producing oil upon the other parcels included in the community lease. Likewise, the owner of the five other parcels

(plaintiff's assignor) failed to defend its title to said parcels, with the result that the lessee also lost its rights under the lease with respect to those parcels. The plaintiff and her assignor failed to perform the conditions to be performed by them under the lease, and they failed to furnish the consideration promised by them for the agreement on the part of the lessee to pay royalties to them. Plaintiff was not entitled to any oil royalty under the provisions of the community lease.

Plaintiff argues that the consideration for the agreement on the part of the lessee to pay royalties will not fail by reason of the loss of title to a particular parcel of land, but will fail only by reason of a loss of title to all the parcels included in the community lease; that plaintiff's loss of title herein is immaterial; and that the obligation on the part of the lessee to pay plaintiff and her assignor a share of the oil production from wells on other parcels in the lease can be terminated only by the failure of consideration with respect to the land of her colessors. According to that argument, it would seem that a person who enters into a community oil lease, as the purported owner of certain property when in fact he is not such owner, would be entitled to receive royalty payments from the lessee for oil produced upon the land of his colessors, merely because he executed the lease, to the same extent as if he were the owner of the property. This contention is not sustained.

The case of *Tanner* v. *Title Ins. & Trust Co.*, *supra*, 20 Cal. 2d 814, relied upon by appellant, is distinguishable from the present case. In that case, where there were nine lots in the community oil lease and oil wells were on two of the lots only, the lessee and all the owners of the lots entered into a written agreement terminating the lease as to all the lots except the two lots upon which oil was being produced. Thereafter all the owners continued to participate in the royalties from the two lots for approximately four years. Some of the lots as to which the lease had been so terminated, were, after such termination, included in a different community oil lease and oil was produced therefrom, but the owners of the two oil-producing lots in the first lease did not participate in the royalties from the second lease. The owners of the two producing lots in the first lease commenced the action (relied upon by appellant) to quiet their titles to the oil royalties under the first lease. After the first lease had been made, an owner of one of the nine lots executed a trust deed covering his lot,

but prior to doing so the lessee and that owner, upon the demand of the beneficiary named in the trust deed, executed a subrogation agreement making the lease subject to the trust deed. The trust deed was foreclosed and the beneficiary purchased the lot at the sale. In the quiet title action commenced by the owners of the two lots, the purchaser at that sale sought to quiet title in itself to a share of the royalties from the said two lots in the first lease. The owner of the lot which was sold at the foreclosure sale was not made a party to that action. It was held in that case that, under the provisions of the agreement terminating the first lease as to all the lots except said two lots, all the owners under the first lease were entitled to share in the royalties from oil produced upon the two lots. It was also held therein that the purchaser at the foreclosure sale was not entitled to have title quieted in it to a share of such royalties. It is to be noted therefore that a material respect in which said case, relied upon by appellant, is distinguishable from the present case is that the lessee and all the owners under the first lease entered into the agreement terminating the lease as to all lots except the two oil-producing ones, and that said agreement in legal effect reserved to the owners of the surrendered lots the right to share in the royalties from oil produced on the two lots.

██ It is not necessary to determine whether the court erred in requiring the plaintiff and the defendants Salter to interplead their rights concerning the royalty interests. The defendants Salter, in their answers to the second amended and supplemental complaint, pleaded that they were the owners of said parcels and the royalty rights pertaining to those properties, and they asked that their titles thereto be quieted as against the appellant. Under the pleadings the court had power to determine the matter of title as between plaintiff and the defendants Salter, and "It was the duty of the court to adjudicate the whole question according to the evidence and to award each litigant the judgment for such interest as his proofs justified." (*Milton E. Giles & Co.* v. *Bank of America,* 47 Cal.App.2d 315, 323 [117 P.2d 943].) Although the defendant Fred Salter acquired no title to the royalty interests as a result of the foreclosure sales, the evidence was sufficient to support the judgment quieting his title in the royalty interests as against appellant in view of the new counterparts of the lease made by him and the lessee concerning his five parcels. As above shown, after the foreclosure sale of appellant's Lot 1, she had no title to any royalty interest in the oil pro-

duced upon the other parcels in the community lease, and she did not acquire title to any such royalty interest by reason of the quitclaim deeds to the five other parcels.

It appears that defendant Amanda M. Salter did not make a new counterpart of the lease covering Parcel 4 acquired by her. The court quieted her title to Parcel 4 as against plaintiff, but it appears that the court did not quiet her title to royalty interests in oil produced upon the land that remained in the community lease.

The judgment is affirmed.

Shinn, P. J., and Vallée, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied June 16, 1949.