[Civ. No. 17008.  Second Dist., Div. Three.  Jan. 11, 1950.]

LEON A. FRIEDRICH, Respondent, v. CHARLES ROLAND et al., Appellants.

Lauren M. Handley for Appellants.

Edmund I. Read for Respondent.

VALLÉE, J.—Leon A. Friedrich commenced this action against Charles Roland and Dorothy Roland for specific performance of a contract to sell a parcel of real property and for damages.  Charles Roland filed an answer and cross-complaint to rescind and cancel the contract on the ground

of fraud. The summons and complaint were served on Dorothy Roland. Not having answered in the time allowed by law her default was entered. She thereafter moved to be relieved of the default. Her motion was denied. Judgment was for Friedrich. Charles Roland and Dorothy Roland appealed. Their appeals require separate consideration.

## Appeal of Charles Roland

Charles Roland and Dorothy Roland for many years lived together as man and wife without being married. They acquired Lot 108, Tract 2249 as joint tenants. In 1942, as lessors, they joined in the execution of a community oil lease covering Lot 108 under the terms of which they held as joint tenants 1.67295 per cent of the lessor's one-fifth interest. A well was not drilled on Lot 108. From 1942 to March 31, 1948, they received royalties from oil produced from other property under the lease. Prior to July, 1946, they separated. July 18, 1946, they entered into a written property settlement agreement in which Dorothy for a consideration agreed to convey Lot 108, Tract 2249 to Charles. No mention was made of the royalty interest under the oil lease in this agreement. Dorothy did not convey Lot 108 to Charles and he instituted an action against her to compel her to specifically perform her contract. She defaulted and judgment followed on September 12, 1946. The judgment did not mention the royalty interest held by her in the community oil lease, nor did it order her to convey her interest therein to Charles.

The cross-complaint alleged that Friedrich throughout 1946 was a licensed real estate broker; that about March, 1946, Charles listed Lot 108, together with the royalty interest, with Friedrich for sale for $1,800 and that several months later Friedrich informed Charles that he could not sell at $1,800 and suggested that the listing be reduced to $1,500, to which Charles agreed. These allegations were not denied. The listing was verbal.

October 31, 1946, Charles entered into a contract in writing with Friedrich by which he agreed to sell and Friedrich agreed to buy Lot 108 and all oil rights for $1,000. Dorothy was not a party to this contract. Friedrich at the time paid Charles $600. The balance was to be paid through escrow. The contract provided that an escrow was to be opened on November 4, 1946. Charles testified that between October 31 and November 4, he learned for the first time that the decree in the specific performance action he had brought against

Dorothy did not require her to convey the royalty interest in the oil lease, and that shortly after November 4 he told Friedrich that he could not go on with the deal because he could not deliver good title and that he then offered to return the $600. Friedrich denied that Charles offered to return the $600. Friedrich signed escrow instructions. Charles did not.

November 2, 1946, Friedrich entered into a contract in writing with Munson by which he agreed to sell and Munson agreed to buy Lot 108 and all oil rights for $1,500, subject to the purchase from Charles being completed. Munson owned the property immediately adjoining Lot 108.

August 6, 1947, Charles signed and delivered to Friedrich a promissory note for $500, payable 90 days after date.

January 12, 1948, Charles served on Friedrich a notice of rescission of the contract of October 31, 1946, and therein offered to restore the $600 he received. Charles testified that just prior to giving the notice he discovered for the first time that Friedrich had been in contact with Munson on several occasions in October, 1946, and knew that he (Friedrich) could sell the property to Munson for $1,500.

■ Charles Roland first contends that the complaint does not state facts sufficient to constitute a cause of action for the reason that it does not allege any facts showing that the contract of October 31, 1946, was just and reasonable or that the consideration was adequate. He demurred to the complaint both generally and specially. His demurrer was overruled. The complaint alleged the making of the contract, setting it forth *in haec verba* and that "the consideration named therein [$1,000] was, at the time of making the said agreement, the fair and reasonable value of said real property." There was no other averment bearing on the point. "It is not sufficient to allege generally that the contract sought to be enforced is just and reasonable and the consideration adequate; such allegations are regarded as mere conclusions of law; to be sufficient the complaint must allege facts which show that the contract is fair and the consideration adequate, and that it would not be inequitable to enforce it." (23 Cal. Jur. § 53, p. 495, and cases there cited.) The allegations were sufficient to meet the rule. In *W. G. Reese Co.* v. *House,* 162 Cal. 740, the court said, page 745 [124 P. 442]: "But such facts [that the consideration was fair and adequate] are sufficiently alleged in the complaint before us, in which, as we have seen, there is a specific averment to the effect that the

sum of twenty-four hundred dollars, mentioned in the option, is and at all times since the execution of the agreement has been a fair and reasonable value of said property. (*Brown* v. *Town of Sebastopol,* 153 Cal. 704, [19 L.R.A.N.S. 178, 96 P. 363].) An allegation that property is reasonably worth a certain sum is an averment of a fact, and where such sum appears to be no greater than the price agreed upon for the sale, the plaintiff has fully complied with his obligation to show by averment of appropriate facts that the consideration for the contract sought to be specifically enforced is adequate. (See *White* v. *Sage,* 149 Cal. 613, [87 P. 193].)'' (See, also, *Foley* v. *Cowan,* 80 Cal.App.2d 70, 74-76 [181 P.2d 410]; *Boro* v. *Ruzich,* 58 Cal.App.2d 535, 540 [137 P.2d 51]; *Minaker* v. *Sunset Building etc. Co.,* 25 Cal.App. 771, 773 [145 P. 542].)

Charles Roland claims that a confidential relationship existed between himself and Friedrich; that Friedrich knew at the time he agreed to buy the property for $1,000 that he could immediately sell it to Munson for $1,500 and that he did. He relies on the rule that the law imposes on a real estate agent the same obligation of undivided service and loyalty that it imposes on a trustee in favor of his beneficiary (Civ. Code, §§ 2228, 2230, 2322, subd. 3; *Rattray* v. *Scudder,* 28 Cal.2d 214, 222 [169 P.2d 371, 164 A.L.R. 1356]), and the principle which prohibits an agent from concluding with himself directly or indirectly any transaction in which he is employed as an agent without the fullest disclosure of the fact and all circumstances relating to it and without permission or acquiescence of the principal with full knowledge of all these facts. (*Sands* v. *Eagle Oil & Refining Co.,* 83 Cal. App.2d 312, 318 [188 P.2d 782].) He refers to the Sands case in which the court stated, page 320; that when ''the agent concludes a real estate transaction with himself without the knowledge of his principal such a transaction will always be set aside at the option of the principal. Absence of actual fraud in the transaction; of undue advantage for the agent; of injury to the principal or of other similar features is then immaterial. The rule is intended to prevent temptation and the possibility of wrong. Only ratification by the principal after full knowledge of all facts can defeat his right to avoid the transaction. *Burke* v. *Bours,* 92 Cal. 108 [28 P. 57]; *Sterling* v. *Smith,* 97 Cal. 343, 347 [32 P. 320]; *Newell-Murdoch Realty Co.* v. *Wickham,* 183 Cal. 39, 44 [190 P. 359]; *Butler* v. *Agnew,* 9 Cal.App. 327, 332 [99 P. 395]; *Silver* v. *Logue,* 127

Cal.App. 565, 572 [16 P.2d 183].'' These principles are not applicable to the facts. The court found that Friedrich was not guilty of fraud. The finding is supported by the evidence. Charles knew that he was selling to Friedrich. There was evidence from which the court could have inferred that Charles promoted the sale at $1,000 because he was badly in need of money. Friedrich and Munson each testified that he did not discuss the possible purchase of the property until November 2, 1946. While the evidence would have supported a contrary finding, this court may not disturb the finding made.

█ The court found and adjudged that Charles was on October 31, 1946, the owner of Lot 108, together with 1.67295 per cent of the lessor's one-fifth royalty in the community lease. This finding is not supported by the evidence. The proof established that on October 31, 1946, Charles and Dorothy were the owners of Lot 108 and of the royalty interest in oil produced under the community lease as joint tenants. Dorothy in the property settlement agreement agreed to convey Lot 108 to Charles. She was ordered by court decree to convey Lot 108 to Charles. She did not agree to convey her royalty interest to Charles. Friedrich says the evidence shows she intended to agree to convey it. Whether she intended to is of no moment. The fact is that she did not agree to convey her royalty interest. The judgment in the specific performance action did not require Dorothy to convey her royalty interest to Charles. In fact the judge who rendered the judgment in that action expressly eliminated therefrom provisions to that effect. █ The contract on the part of Dorothy to convey Lot 108 to Charles carried with it her interest in the percentage of the royalty reserved by them in oil produced from Lot 108. █ It did not carry with it an agreement to convey her interest which she owned as a colessor in oil produced from the lands of other colessors. By the execution of the community lease, Charles, Dorothy, and each of the other lessors, conveyed to his colessors a percentage interest in all oil produced on his land by the lessee during the continuance of the lease. The royalty interest thus conveyed by each landowner to his colessors is an estate in real property, an incorporeal hereditament in gross. The incorporeal hereditament owned by the grantor in the oil produced from the lands of his colessors existing in gross does not follow the conveyance of the lessor's land but can only be conveyed by a specific conveyance of that interest. (*Tanner* v. *Title Ins. &*

*Trust Co.,* 20 Cal.2d 814, 820 [129 P.2d 383].)　██　As Dorothy did not agree to convey to Charles her incorporeal hereditament in gross in oil produced from the lands of other colessors, the trial court erred in adjudging that Charles is the owner of the 1.67295 per cent royalty interest.

██　Where a vendor has no title or interest in the property he contracts to convey, he cannot be required to specifically perform. Equity will not compel him to obtain title. Where the vendor, however, is the equitable owner of the property and has the right to call for the legal title, he may be compelled by the vendee to specifically perform the contract. (*Milkes* v. *Smith,* 91 Cal.App.2d 79, 81 [204 P.2d 419].)

██　Charles by reason of the property settlement and the decree in the specific performance action had the right to call for the legal title of Dorothy's interest in Lot 108 and for her percentage of the royalty in oil produced from Lot 108. He had no right whatever in the interest owned by Dorothy in oil produced from the lands of their colessors, nor did he have any right to call for the legal title to such interest. Friedrich, at his option, can require Charles to specifically perform the contract as to the property owned by him and as to which he had the right to call for the legal title. (*Milkes* v. *Smith,* 91 Cal.App.2d 79, 81 [204 P.2d 419].) He cannot require Charles to specifically perform as to the interest owned by Dorothy and for which he has no right to call for the legal title. The court erred in decreeing that Charles convey to Friedrich Dorothy's interest in the oil produced from the lands of their colessors.

██　The judgment awarded Friedrich all of the income received by the Rolands from the community lease from October 31, 1946, to March 31, 1948. This income came from oil produced from lands under the lease other than Lot 108. One-half of this income was the property of Dorothy. For the reasons heretofore stated, the court erred in making this award.

██　In the cross-complaint Charles alleged that he was unable to give clear title to Lot 108 by reason of the refusal of Dorothy to sign a deed and that Friedrich offered to cancel and rescind the contract of October 31, 1946, on condition that Charles pay him $500, the profit he claimed to have lost by reason of the inability of Charles to convey. He alleged that on August 6, 1947, at the instance of Friedrich, he signed and delivered to him a promissory note for $500. He alleged that the note was procured by fraud. The answer

to the cross-complaint alleged that prior to delivery of the note, Friedrich had agreed to accept the note, together with $600 in cash, from Charles in full satisfaction of his claim against Charles for failing to ·comply with the contract, that Charles did not pay the $600 within the time agreed upon, that he (Friedrich) did not accept the note and was willing to return it. On at least two occasions at the trial the parties stipulated that the decree should provide that this note be delivered up and cancelled. No express findings were made with respect to these issues. The only finding at all applicable to them is ''that all of the denials, allegations and averments of the answer and cross-complaint of defendant, Charles Roland, which are adverse to or inconsistant with the allegations and averments of said plaintiff's complaint and answer to defendant's cross-complaint are untrue, and that all of the denials, allegations and averments of plaintiff's answer to said defendant's cross-complaint are true.'' This finding is unintelligible. If it is a finding that the note was not executed it is contrary to the admission in the answer to the cross-complaint and to the stipulations of the parties. No conclusion or decree was made concerning the note. The evidence is not at all clear as to the purpose or effect of the agreement with respect to the giving of the note and the payment of the $600. Whether the same constituted a settlement of the controversy between Charles and Friedrich, leaving an obligation on the part of Charles to pay Friedrich $600, cannot be ascertained from the evidence. In any event, it was error not to make specific findings with respect to the matter and to provide in the judgment for cancellation of the note.

### Appeal of Dorothy Roland

Dorothy Roland claims that the court abused its discretion in denying her motion to relieve her from her default. In her affidavit in support of her motion, Dorothy in effect stated that she was unaware of the fact that the property settlement agreement did not provide for conveyance to Charles of all of her interest in the community lease and of the fact that the decree in the specific performance action did not require her to convey that interest; that she believed when served with the complaint and summons in this action that she no longer had any interest in the property, and that just prior to making the motion she learned that she did have an interest. The facts fully justified her erroneous belief. Her showing in this regard was not contradicted by any competent evidence. Her motion

was supported by a sufficient affidavit of merit and she tendered a verified answer in which she denied the allegations of the complaint. Whether her mistake was one of fact or one of law, it was ground for relief from the default. (14 Cal. Jur. § 95, p. 1035.)

■ Code of Civil Procedure, section 473, providing that a trial court may relieve a party from "a judgment, order, or other proceeding taken against him through his mistake, inadvertence, surprise or excusable neglect" is remedial in its nature and is to be liberally construed. Sound policy favors the determination of actions on the merits. (*Potts* v. *Whitson*, 52 Cal.App.2d 199, 209 [125 P.2d 947].) "Because of this," as said in *Kent* v. *County Fire Ins. Co.*, 27 Cal.App.2d 340, 341 [80 P.2d 1019], "the reviewing courts will scan more closely orders denying relief and are more prone to reverse orders of denial. They look with disfavor upon a party, who, regardless of the merits of his case, attempts to take advantage of mistake, surprise and inadvertence of his adversary. (*Brill* v. *Fox*, 211 Cal. 739, 743 [297 P. 25].)" ■ The discretion of the lower court in ruling upon matters under section 473 is a legal discretion, not an arbitrary one. ■ Under the circumstances of the case at bar we think it patent that Dorothy should have been relieved of her default.

Other errors assigned are not likely to occur on a retrial and need not be considered.

The judgment in favor of plaintiff and cross-defendant Friedrich and against defendant and cross-complainant Charles Roland is reversed. The judgment in favor of plaintiff Friedrich and against defendant Dorothy Roland is reversed with directions to relieve her of her default and allow her to plead to the complaint.

Shinn, P. J., and Wood, J., concurred.

A petition for a rehearing was denied February 8, 1950.