232 P.2d 868]

[Civ. No. 18055. Second Dist., Div. Three. June 21, 1951.]

LEONARD H. BROWN et al., Appellants, v. ANDREW J. COPP, JR., et al., Respondents.

Rex B. Goodcell, Gilbert E. Harris and Lawrence L. Otis for Appellants.

Andrew J. Copp, Jr., in pro. per., and H. Dexter McKay for Respondents.

VALLÉE, J.—Appeal by plaintiffs from a judgment for defendants Bancroft and Copp in an action for a declaration of plaintiffs' rights in landowner's royalties under a community oil and gas lease. Plaintiffs, as owners of the fee by virtue of a trustee's deed, claim the entire landowner's roy-

alty interest. Defendants claim to be the owners of 20 per cent of the royalty interests.

September 2, 1936, one Moody executed a community oil and gas lease embracing several parcels of realty which he owned. The lease was for 18 months and "so long as oil or gas or other hydrocarbon substances are produced therefrom in paying quantities." Oil has been and is produced in commercially paying quantities. Moody's royalty interest was 61.714 per cent of the whole. The lease was recorded August 12, 1937.

December 13, 1938, Moody and wife executed a deed of trust of the realty to secure the payment of a note for $11,400 in favor of Salvation Army. In the note (set out in the deed of trust), Moody agreed to pay the $11,400 "in accordance with the terms and provisions of a certain contract dated December 13, 1938 by and between said Salvation Army and Gene S. Moody and others, which contract is hereby referred to and by this reference made a part of this note. . . . The payment of said indebtedness is to be made at the time and in the manner and from the sources set out and referred to in the agreement above described." The deed of trust was recorded December 15, 1938.

The contract of December 13, 1938, stated that "The fund or source referred to in said non-negotiable note is 80% of the 61.714% landowner royalty interest belonging to Gene S. Moody in that certain Community Oil and Gas Lease dated September 2, 1936, made and entered into by and between Gene S. Moody, herein, and others as Lessors . . . which Lease has been assigned to the Superior Oil Company, a corporation, all as more particularly set forth in that certain assignment of royalties dated December 13, 1938, wherein Gene S. Moody is named as assignor and the Salvation Army as assignee. It is mutually agreed that the remaining 20% of such royalties shall continue to be paid to G. A. Smith, also known as Gene S. Moody, or his heirs, executors, administrators or assigns." The contract was not recorded.

December 13, 1938, Moody assigned to Salvation Army 80 per cent of 61.714 per cent of the landowner's royalty interest in the lease of September 2, 1936. This assignment was recorded December 16, 1938.

December 13, 1938, Moody assigned to Herbert Freston and J. R. Files 20 per cent of 61.714 per cent of the landowner's royalty interest in the lease of September 2, 1936. This assignment was recorded December 20, 1938.

The instruments dated December 13, 1938, were executed concurrently and as a part of one transaction.

May 10, 1941, Moody authorized Herbert Freston and J. R. Files to transfer to Laura Bancroft the 20 per cent. The instrument recited that the assignment to Freston and Files was "as security for the payment of attorney's fees." This instrument was not recorded.

October 20, 1941, Herbert Freston and J. R. Files executed a quitclaim deed to defendant Bancroft in which they quitclaimed to her "all of their right, title, interest, and estate in and to 20% of 61.714% landowner's royalty interest" previously assigned to them. This quitclaim deed was not recorded.

March 21, 1942, Herbert Freston and J. R. Files executed a "release" which recited the assignment by Moody to them of 20 per cent of 61.714 per cent of the landowner's royalty interest in the lease; that "while said assignment appears to be absolute in form, it was in fact accepted by the undersigned only as security for an obligation and was only a mortgage"; that the obligation had been fully satisfied; and declared that they "hereby release that certain mortgage, designated assignment, dated December 13, 1938." This release was not recorded.

March 20, 1942, defendant Bancroft assigned to defendant Copp 5 per cent of 61.714 per cent of the landowner's royalty interest in the lease of September 2, 1936. This assignment was recorded March 20, 1942.

January 16, 1947, Salvation Army assigned to plaintiffs the beneficial interest in the deed of trust of December 13, 1938. This assignment was recorded February 19, 1947.

January 16, 1947, Salvation Army assigned to plaintiffs "all right, title and interest under that certain Assignment of Landowners Royalty dated December 13, 1938, executed by Gene S. Moody, Assignor, to Salvation Army." This assignment was recorded February 19, 1947.

Default was made under the terms of the deed of trust, a trustee's sale was had, and the property sold to plaintiffs. October 28, 1947, the trustee issued its deed by which it granted and conveyed the realty to plaintiffs. This deed was recorded October 29, 1947.

Each conveyance to which we have referred was made for a valuable consideration.

On direct examination plaintiff Leonard H. Brown testified that prior to the time he purchased the beneficial interest in the deed of trust of December 13, 1938, he had no knowledge of any transfers of royalty interests other than to Salvation

Army and other than as disclosed by the official records of the county of Los Angeles. On cross-examination he testified as follows: I read the deed of trust before I purchased it from Salvation Army. I noted the reference in the deed of trust to another contract according to which payments were to be made for the satisfaction of the obligation of the deed of trust and note. I noticed that it referred to a contract dated December 13, 1938. I looked that up, "[a]fter I got the assignment. The Salvation Army told me that was the assignment of the landowner's royalty to them." I noticed that the document itself stated it was 80 per cent of 61.714 per cent of the landowner's royalty. I did not make any inquiry at that time as to who were the owners of the other 20 per cent. To the best of my knowledge, I first ascertained who held the other 20 per cent after I foreclosed the property. I bought without investigation in that respect. After I purchased the property at the trustee's sale, I made a demand upon the bank to pay the 20 per cent, and the bank told me who had been receiving the 20 per cent.

The court found, concluded, and adjudged that plaintiffs are the owners of 80 per cent of 61.714 per cent of the landowner's royalty interest; that they have no right, title, or interest in the 20 per cent; and that the respondents are the owners thereof. Plaintiffs appeal.

Plaintiffs claim that the finding that they have no right, title, or interest in the 20 per cent is not supported by the evidence. They argue that the trustee's deed of October 28, 1947, conveyed to them 61.714 per cent of the landowner's royalty interest in the lease. We do not agree.

The oil lease was executed by Moody on September 2, 1936. ▉ Having leased the realty for oil and gas purposes he was then vested with three distinct and separate interests— (1) the fee simple title to the surface estate, (2) the reserved royalty interest, and (3) the possibility of a reverter of the minerals. (8 Cal.Jur. 10-Yr.Supp. [1948 Rev.] 732, § 122, and cases there cited.) Each of these interests is an interest in real property, alienable, and may be conveyed separately and independently of the others. *(La Laguna Ranch Co.* v. *Dodge,* 18 Cal.2d 132, 135 [114 P.2d 351, 135 A.L.R. 546]; *Standard Oil Co.* v. *J. P. Mills Organization,* 3 Cal.2d 128, 132 [43 P.2d 797].) ▉ As the lease was a community lease, Moody, and each of the other landowners, conveyed to his colessors a percentage interest in all oil produced on his land by the lessee during the life of the lease, which is an estate

in real property. This estate does not follow the conveyance of the lessor's land but can only be conveyed by a specific conveyance of that interest. *(Tanner* v. *Title Ins. & Trust Co.,* 20 Cal.2d 814, 820 [129 P.2d 383] ; *Friedrich* v. *Roland,* 95 Cal.App.2d 543, 549 [213 P.2d 423].)

A deed granting a general estate in land conveys all oil rights in the land to the grantee as an incident to the conveyance, except as such rights have previously been assigned by instruments of which such grantee had actual or constructive notice, or are reserved by the deed. *(Callahan* v. *Martin,* 3 Cal.2d 110, 113, 114 [43 P.2d 788, 101 A.L.R. 871] ; *Standard Oil Co.* v. *J. P. Mills Organization,* 3 Cal.2d 128, 132 [43 P.2d 797].) Generally, a valid deed of trust vests the whole estate in the trustee, subject to the execution of the trust. (Civ. Code, § 863.) However, every estate not embraced in an express trust, and not otherwise disposed of, is left in the author of the trust or his successors. (Civ. Code, § 866.) A trustee's deed conveys the absolute legal title to the purchaser, as against all claims subordinate to the deed of trust, but subject to all prior rights, interests, and titles. *(Streiff* v. *Darlington,* 9 Cal.2d 42, 45 [68 P.2d 728].) A trustee's deed does not carry to the grantee any better right or title than the trustors had when they executed the deed of trust. *(Roberts* v. *Colyear,* 179 Cal. 669, 672 [180 P. 937].)

The record of an instrument is constructive notice of its contents to subsequent purchasers. (Civ. Code, § 1213.) The rule contemplates only conveyances by one having the record title to the property conveyed. *(Dobbins* v. *Economic Gas Co.,* 182 Cal. 616, 620 [189 P. 1073].) Recordation of an assignment of an interest in the minerals "imparts constructive notice to a subsequent grantee of the fee in the general estate." *(Callahan* v. *Martin,* 3 Cal.2d 110, 113 [43 P.2d 788, 101 A.L.R. 871].) Whenever a party has information or knowledge of extraneous facts which of themselves do not amount to or tend to show actual notice but which are sufficient to put a reasonably prudent man upon inquiry respecting a conflicting interest, claim or right, and the circumstances are such that the inquiry, if made and followed up with reasonable care and diligence, would lead to knowledge of the interest, claim or right which really exists, then the party is absolutely charged with constructive notice of such interest, claim or right. *(Olson* v. *Cornwell,* 134 Cal.App. 419, 428 [25 P.2d 879].)

When plaintiffs purchased the realty at the trustee's sale, they took the whole estate vested in the trustee, subject to all prior rights, interests, and titles. They did not take any such right, title or interest of which they had notice, either actual or constructive. On the face of the deed of trust, recorded December 15, 1938, Moody conveyed to the trustee all of his estate in the realty, including his interest in the percentage of the royalty reserved by him in oil produced from that realty. The deed of trust did not convey to the trustee Moody's interest as a colessor in oil produced from the lands of other colessors. (*Gillis* v. *Royal Service Corp.*, 91 Cal.App. 2d 365, 368 [204 P.2d 968].) Plaintiffs did not, therefore, acquire that interest from the trustee.

Prior to purchasing from Salvation Army plaintiffs had actual notice that a contract, dated December 13, 1938, was a part of the deed of trust. Prudent inquiry concerning that contract would have disclosed that Moody had retained 20 per cent when he executed the deed of trust. The record at that time also told plaintiffs that on the day the deed of trust was executed Moody had assigned the 20 per cent to Herbert Freston and J. R. Files. Plaintiffs had notice that Herbert Freston and J. R. Files were the record owners of the 20 per cent for neither the quitclaim deed from Herbert Freston and J. R. Files to defendant Bancroft nor the release executed by them was of record. Plaintiffs made no inquiry of Freston and Files. The assignment from Moody to Salvation Army, recorded December 16, 1938, and the assignment to Herbert Freston and J. R. Files, recorded December 20, 1938, conveyed 80 per cent and 20 per cent, respectively, of Moody's interest in the percentage of the royalty reserved by him in oil produced from the realty owned by him and the interest which he owned as a colessor in oil produced from the lands of other colessors. When plaintiffs purchased from Salvation Army on January 16, 1947, they acquired the royalty interest theretofore assigned by Moody to Salvation Army—80 per cent of 61.714 per cent. Plaintiffs knew at that time that they had purchased 80 per cent. This assignment included 80 per cent of the interest which Moody owned as a colessor in oil produced from lands of colessors. After purchasing from Salvation Army, plaintiffs "looked up" the contract of December 13, 1938, and learned therefrom as a fact that the documents dated December 13, 1938, had been executed concurrently

and as a part of the same transaction, that the 20 per cent had been retained by Moody, and that it was not vested in the trustee. Plaintiffs had all of the foregoing notice and knowledge when they purchased at the trustee's sale. They made no inquiry to learn who owned the 20 per cent until after the trustee's sale. The facts were such as to put plaintiffs on inquiry and charge them with notice, prior to the trustee's sale, of what the inquiry would have disclosed if duly prosecuted, to wit, that the 20 per cent was not vested in the trustee. *(Cf. National Hardware Co.* v. *Sherwood,* 165 Cal. 1, 8 [130 P. 881]; *Leonard* v. *Osburn,* 169 Cal. 157, 160 [146 P. 530, 532]; *Dobbins* v. *Economic Gas Co.,* 182 Cal. 616, 621 [189 P. 1073]; *McCreery* v. *Charlton,* 185 Cal. 37, 40-41 [195 P. 670]; *Union Trust etc. Bank* v. *Ishkanian,* 45 Cal.App. 347, 350 [187 P. 757]; *Wilson* v. *Coffey,* 92 Cal.App. 343, 348-349 [268 P. 408]; *Dreifus* v. *Marx,* 40 Cal.App.2d 461, 468, [104 P.2d 1080].) As the record stood the assignment from defendant Bancroft to defendant Copp was from a stranger to the record chain of title and therefore was not constructive notice to plaintiffs. *(Garber* v. *Gianella,* 98 Cal. 527, 529 [33 P. 458]; *Ludy* v. *Zumwalt,* 85 Cal.App. 119, 125 [259 P. 52].) However, under the circumstances that fact is not material.

We conclude that the findings are supported by the evidence and that the court did not err in concluding that plaintiffs have no right, title, or interest in the 20 per cent of 61.714 per cent of the landowner's royalty interest in the lease. The judgment must therefore be affirmed.

We are constrained to again call the attention of the profession to rule 10 (b) of the Rules on Appeal which provides that ''When the party shall have been notified by the clerk of the reviewing court that an appeal has been set for hearing, each party shall file with the clerk of the superior court a notice specifying such of the original exhibits or affidavits designated by any party for inclusion in the record, as he desires transmitted to the reviewing court, and the clerk shall immediately transmit them to the reviewing court.'' (36 Cal.2d 12.) As is evident, the decision of this appeal rests largely on the exhibits. Counsel for appellants in their notice to the clerk designated the exhibits to be included in the record on appeal and to be transmitted to this court. When the clerk of this court notified counsel that the appeal had been set for hearing, he included the following in the notice: ''Cause ordered on Calendar of Division Three for argument at 10 A. M. May 16, 1951. If exhibits

are desired, arrangement should be made at once for their transfer (Rule 10b)." When we began work on the case the exhibits were not in the office of the clerk of this court. In order to decide the appeal on its merits and not on a technicality, we ordered the exhibits transmitted to this court. A delay of several days then ensued. The result was great inconvenience, unnecessary delay, and loss of the time of the members of the court. We cannot too strongly emphasize what was said by Mr. Presiding Justice Barnard in *Kipp* v. *Warriner*, 86 Cal.App.2d 814, 815 [195 P.2d 888]: "While certain contentions based upon these exhibits are made in appellant's briefs, it may be assumed that he has abandoned these contentions since he has not desired to arrange to have these exhibits sent here as a part of the record. Rule 10(b) of the Rules on Appeal requires a party to arrange for the transmission to the reviewing court of desired exhibits when he receives notice that the appeal is set for hearing. While it would seem that this rule is both clear and one easily complied with, we have had considerable difficulty with it in this district. . . . No great difficulty or hardship is involved in requesting the transfer of exhibits if a party relies on them as an essential part of his record. On the other hand, much inconvenience and extra work has been caused in this court by the discovery, during the study of a case, that an important and much relied on exhibit has not been transferred. While the rule permits the court to then order the exhibit sent up this involves a delay, sometimes for many days. In a complicated case, where the materiality of the absent exhibit is discovered after working a number of days, this delay not infrequently causes considerable extra work upon later returning to that case. Moreover, the point affected by the exhibit may have been abandoned by the party who, after having the matter directly called to his attention, has expressed no desire to have the exhibit transferred." The rule has been in effect for eight years and should be well known now to all members of the profession. The frequency with which rule 10(b) is overlooked prompts us to warn counsel that failure to have the exhibits relied on transmitted to this court may result in decision of the appeal upon the record before us without the exhibits.

Affirmed.

Shinn, P. J., and Wood (Parker), J., concurred.