[Civ. No. 29529. Second Dist., Div. Five. Aug. 15, 1967.]

ARNOLD H. RENDEN et al., Plaintiffs and Respondents, v. GENEVA DEVELOPMENT CORPORATION, Defendant and Appellant.

580

Adelman & Schwartz, Milton M. Adelman, Burr & Smith and Philip Grey Smith, for Defendant and Appellant.

Benjamin J. Goodman, Herbert Gall and John U. Gall for Plaintiffs and Respondents.

KAUS, P. J.—Defendant Geneva Development Corporation (Geneva) appeals from a judgment to the effect that there exists an easement for parking purposes appurtenant to the real property we refer to as parcel A, owned by plaintiffs, the servient tenement of which is the property referred to as parcel B, to which defendant Geneva holds a lease expiring on December 31, 2047. We affirm.

*Facts*

What follows is a skeletal outline of the basic facts. We omit matters and references to certain persons in the chains of title not necessary to an understanding of the legal issues. Subsidiary facts will be developed in connection with our discussion of Geneva's points on appeal.

In 1950 Aletha Walters[1] owned a 15-acre parcel of property in Pico Rivera which we refer to as the "larger parcel." In February of that year she leased the larger parcel to the Clarks[2] for a term of 49 years. The Clarks then started to

[1] Then known as Aletha Burnam, married to and coowner with Thompson Burnam who later died.

[2] For purposes of this appeal it is unnecessary to distinguish between the various members of the Clark family who appear from time to time on the various conveyances in evidence.

develop the property as a shopping center. A major subtenant was a Shopping Bag market. The lease with the market was signed in March 1951, and was to last for 20 years from January 1, 1952. Under the terms of that lease the lessor, among other things, undertook to "pave and make serviceable . . . an electrically lighted vehicle parking area. . . ." Paragraph 15 provided as follows: ". . . the said parking area . . . at all times during the term of this lease . . . be for use in common by lessee and lessor and any other lessees or tenants of any part of the larger parcel . . . [of] which the herein demised premises constitute a part."

In 1958 by three simultaneously recorded leases Aletha Walters and the Clarks, in effect, subdivided the larger parcel into three parcels, referred to throughout the trial as parcels A, B and C. The lease to parcel A was to start on January 1, 1959 and was for a term of 88 years; the leases to parcels B and C were for 89 year terms, starting January 1, 1958. A paragraph of each lease—paragraph 22 of the lease to parcel B—provided as follows: "This lease, *and the two leases executed concurrently herewith* by Aletha K. Burnham, as Lessor, and W. E. Clark and Edith M. Clark, as Lessee, supersede all previously executed leases between Thompson W. Burnam and/or Aletha K. Burnam, as Lessors, and W. E. Clark and Edith M. Clark, as Lessees." (Italics added.)

The total area of the larger parcel is about 15 acres. It is rectangular in shape, the longitudinal axis running north-south. It fronts on Whittier Boulevard on its north and San Gabriel Place on the west.

Parcel C consists of the southern half of the rectangle and is not involved in the litigation excepting tangentially. Parcel A is about 7/10 acres in size and represents the north-west corner of the larger parcel, but does not extend south to parcel C. It is thus bordered by Whittier Boulevard on the north, San Gabriel Place on the west and parcel B on the east and south.

At the pretrial it was agreed that the area of parcel B was about 6½ acres. The sketch below represents a very rough approximation of the result of the 1958 "subdivision." The location of the principal parking area in dispute is shown by diagonal lines.[3]

---

[3] There are several additional smaller parking areas involved in the dispute. The legal and factual issues in connection therewith are precisely the same.

Each of the three recorded leases contained the following paragraph 16:

"SIXTEENTH: The presently existing parking area adjacent to the leased premises and the entrances thereto shall at all times during the term of this lease and any extension thereof be for use in common by Lessee and Lessor and any other Lessees or tenants of any part of the larger parcel of land of which Lessor is the record owner and of which the herein described premises constitute a part."

An aerial photograph, taken a few months after the 1958 leases were executed, indicates the main parking area on parcel B quite clearly. The smaller additional parking areas which are also in dispute appear to be in use. There is no doubt that this photograph shows "the presently existing parking area" referred to in paragraph 16. No significant change in its size or nature took place after 1958.

Sometime in 1960 the Clarks assigned their interest in the leases to parcels A and B to Pico Commercial Center, Inc.,

(Pico). Pico in all respects stands in the shoes of the Clarks. Several subleases entered into by the Clarks on parcel B were also assigned to Pico.[4]

On November 22, 1961, an escrow was closed pursuant to which plaintiffs acquired a fee title to parcel A. A grant deed from Walters and a quit claim deed from Pico, recorded as successive documents, accomplished the result.

Obviously, the combined legal effect of these two deeds was to unite in plaintiffs not only Walters' reversion and Pico's present, possessory interest, but all incidents thereto, including any easements of which parcel A was the dominant tenement. (Civ. Code, §§ 1084, 1104; *Conaway* v. *Toogood,* 172 Cal. 706, 712 [158 P. 200]; *Wolff* v. *Cloyne,* 156 Cal. 746, 750 [106 P. 104]; *St. Louis* v. *DeBon,* 204 Cal.App.2d 464, 466 [22 Cal.Rptr. 443].)

Plaintiffs were doctors who planned to erect a medical building on parcel A. Part of the agreement between plaintiffs, Pico and Walters was a document entitled "Supplemental Agreement" which provided, after various recitals, that: 1. Pico granted to the plaintiffs the right to park the automobiles of tenants, customers, employees and tradespeople within the designated parking area of parcel B; 2. Plaintiffs would pay Pico as a maintenance expense for the upkeep of the parking area 20 cents per 100 square feet of the building to be erected on parcel A; and 3. Pico would prepare parcel A as a building site at its own cost. In that supplemental agreement parcel B is described by reference to an exhibit attached thereto. Unfortunately the exhibit described parcel C.

The supplemental agreement was never recorded. Geneva had no notice of it.

Back to parcel B: in May 1962 one Winton entered into an escrow with Pico to purchase Pico's leasehold on parcel B. Through a series of nominations Geneva emerged from that escrow as the eventual purchaser.

While the above escrow was pending, Walters as lessor and Pico as lessee executed two further leases, which divided parcel B into two parts to correspond to the legal descriptions

---

[4]The 1958 lease to parcel A obligated the Clarks to construct a department store on that parcel. At that time and until 1960 a gasoline station operated as a lessee on parcel A. The lease to the Clarks also provided that if by January 1, 1959, the Clarks had not obtained a prospective tenant for the proposed department store, Walters, the lessor, could rent parcel A for service station purposes on a month to month basis until the Clarks had found a prospective tenant. No substantial structure was ever built on parcel A.

on two deeds of trust which encumbered different portions of parcel B. The expiration dates of the leases were the same as the date on the 1958 lease to parcel 2 and each lease contained a paragraph identical with paragraph 16 in the 1958 lease. The 1958 lease and the 1962 leases to parcel B were all assigned to Geneva, as were about 15 subleases.

Most of the subleases contained references to parking privileges. A typical clause reads as follows: ''It is understood and agreed that the demised premises are a portion of a larger unit consisting of the property herein demised and other mercantile businesses and that Lessors have heretofore provided parking areas for the parking of customer's vehicles. . . .'' This is followed by a formula for allocating part of the cost of maintaining, lighting and cleaning the parking areas to the particular sublessee. In several of the clauses relating to parking in the subleases there is reference to ''the entire *seven and one half acre* shopping development. . . .''

It will be recalled that parcel B only contained 6½ acres.

Such reference to a ''seven and one half acre shopping development'' appears in at least six leases. Five of these antedate the 1958 leases. The sixth lease which speaks of such a 7½-acre development was entered into *after* plaintiffs had become the owners of parcel A. We think that this is a most significant fact and that it should have been most significant to Geneva.

It now seems perfectly plain from the above described documentary evidence and from the undisputed physical facts that Walters and the Clarks, in 1958, intended to and did create parking easements in the then existing parking area located on parcel B, which easements were appurtenant to every other part of the larger parcel.

In view of the nature of the development—a shopping center—it also seems clear that the extent of the use granted by the easements was not restricted to the parking of their own automobiles by Walters, the Clarks and sublessees. On the contrary, the easements grant as a necessary incident to the actual and contemplated use of the larger parcel, the power to permit customers and tradespeople to park their automobiles.

Finally it is obvious that the grant of an easement to Walters as lessor of the larger parcel could only have one purpose: if at any time she again became owner in possession of any portion of the larger parcel, she could grant the parking privileges on parcel B to other lessees and sublessees on

the same terms and to the same extent.

In any event, after Geneva's escrow closed in 1962 a dispute arose between Geneva and plaintiffs. The problem was, of course, whether or not the parking area on parcel B was available to the prospective tenants of plaintiffs' medical building and their patients, customers and tradespeople. The existence of the dispute has so far effectively prevented plaintiffs from proceeding with their plans.

### The Proceedings Below

On February 15, 1962, plaintiffs sued Pico, the Clarks, Walters and Geneva on assorted causes of action.

At the trial, however, all causes of action for damages against Pico, the Clarks and Walters were dismissed without prejudice, on their agreement to waive any applicable statute of limitations for a period of six months after the judgment herein becomes final. The supplemental agreement was reformed to set forth the correct legal description, but the judgment expressly provided that the reformation was not to affect Geneva. The validity of plaintiffs' easement was established and damages in the sum of $1.00 assessed against Geneva. Geneva appeals. Its contentions are discussed under appropriate headings.

At the outset of our discussion of these contentions it is appropriate to note that nowhere does Geneva attack that part of the judgment which declares that the reference to the "larger parcel" in the 1958 lease was "intended to refer to the Larger Parcel of which the Lessor (the defendant Aletha K. Walters) was then the record owner." In other words there is no question of any other pieces of property, other than parcels A, B and C, being involved. Nor can Geneva seriously question the correctness of the court's finding that it was the intention of Walters and the Clarks, in 1958, that the parking privileges provided for by paragraph 16 of the three leases were to be shared by Walters and the lessees and tenants of the entire larger parcel. Its basic position is merely that the intention was never legally carried out, that if there was an easement created in 1958 it was destroyed by merger and, finally, that it was not bound by any parking privileges appurtenant to parcel A, because it did not know of them.

Finally there is no issue concerning the nature of the easement owned by plaintiffs, if they own it. In other words, it appears to be conceded that what was created in 1958, if anything, was a privilege, granted to the owners and lessees of the larger parcel, to permit parking by their sublessees,

customers and tradespeople on the designated parking area on parcel B.

### Creation of Easement Appurtenant To Assignment of Parcel A by 1958 Leases

 Geneva claims that the 1958 leases did not create an easement appurtenant to parcel A because, as it summarizes in its brief, "Walters, the lessor, had no easement on her own fee title and the Clarks (Pico) as lessee had no easement; they had the right to park as lessee and as part of their leaseholding."

The argument is as hard to follow as the summary. To be sure the Clarks obtained the privilege to park on parcel B by virtue of their possessory interest in that parcel, the lease, but Walters, the lessor, either as owner of parcel A or of parcel B had no such privilege, nor did the "other Lessees or tenants" of parcel A. Reliance on section 805 of the Civil Code,[5] on which Geneva bases its argument that no easement in favor of Walters could be created, is misplaced. An easement is an interest in land in the possession of another. The possessors of parcel B were the Clarks and later Pico.[6] If Geneva's position is correct landlords can crisscross their tenant's properties at will, park automobiles in their garages and otherwise interfere with possession. This cannot be.

### Inadequate Description of Dominant Tenement

 Geneva claims that parcel A, the dominant tenement, is inadequately identified. Reliance is placed on sections 1469 and 1470 of the Civil Code. These sections relate to lessors' covenants to do or not to do certain things on contiguous real property. This case is the other way around.

As will be seen Geneva, by its actual and constructive knowledge of the 1958 lease to parcel B and various other matters known to it, was put on inquiry concerning the extent and location of the "larger parcel" and the content of the two leases which, according to paragraph 22, were "executed concurrently herewith."

### Merger

 Geneva argues that even if an easement appurtenant to parcel A existed before plaintiffs acquired title to that

---

[5] "A servitude thereon cannot be held by the owner of the servient tenement."

[6] The Restatement of Property starts its definition of an easement in section 450 as follows: "An easement is an interest in land in the possession of another which . . . ."

parcel, it was extinguished by merger when the escrow to parcel A closed.[7]

The trouble with Geneva's argument is that it is looking at the wrong tenement. The easement created by the 1958 leases burdened the leasehold to parcel B, then held by the Clarks and later by Pico. The dominant tenement was parcel A.

Parcel A was then owned by Walters. Paragraph 16 conveyed the parking easement to her as ". . . Lessor . . . of . . . the larger parcel of land . . . of which the herein described premises constitute a part." Walters, having deprived herself of the right of possession by the 1958 leases, had no parking privileges on parcel B as the owner of that parcel or of parcel A, except through the operation of paragraph 16. An easement is extinguished by merger if the owner of the dominant tenement may do the things permitted by the easement by virtue of an estate in the servient tenement also owned by him.[8] At no time was that ever the case here. The Clarks and later Pico were the lessees of parcel B and never were Walters or the plaintiffs entitled to possession or use of that parcel except by virtue of the easement. To be sure, before the grant of parcel A by Walters to the plaintiffs and the concurrent quit claim by the Clarks, the bundle of rights, privileges, powers and immunities which we call ownership was divided between Walters and the Clarks and these two documents conveyed the full ownership to the plaintiffs; but we are not interested in parcel A if what we are considering is the extinguishment of an easement on parcel B. The claim of merger, therefore, has no merit.

---

[7] Section 811 of the Civil Code reads in part as follows: "A servitude is extinguished: 1. By the vesting of the right to the servitude and the right to the servient tenement in the same person. . . ." Section 497 of the Restatement of Property states the rule as follows: "An easement appurtenant is extinguished by unity of ownership of estates in the dominant and servient tenements to the extent to which the uses which could have been made prior to the unity by virtue of ownership of the estate in the dominant tenement can be made after the unity by virtue ownership of the estate in the servient tenement." Tiffany, "The Law of Real Property," section 822, begins as follows: "An easement is ordinarily extinguished if one person acquires an estate in fee simple in possession in both the dominant and servient tenements."

[8] The statement is not entirely true, since as the Restatement of the Law of Property and Tiffany (op. cit.) in the sections referred to at the beginning of this discussion point out, an easement is not extinguished by merger if the estates in possession in both the dominant and servient tenements, acquired by one person, are such in character that one will or may terminate before the other. In such a case the easement is merely suspended and liable to revive when one of the two estates terminates.

## The Unrecorded Supplemental Agreement

Particularly in its reply brief, Geneva urges that plaintiffs based their claim to parking privileges on the supplemental agreement and that, since Geneva had no notice thereof, plaintiffs' case must fail.

There is no merit in this contention. In the second paragraph of its second cause of action plaintiffs allege that their "rights, duties and obligations arise by virtue of written instruments attached to this complaint. . . ." Among the attached documents is the 1958 lease to parcel B.

Geneva also points to the fact that the supplemental agreement recites that plaintiffs "are desirous of *acquiring* parking privileges within the adjacent six and one-half (6½) acre commercial parcel. . . ." Geneva states correctly that one does not need to acquire what one already has.

Testimony was received concerning the negotiations leading up to the execution of the supplemental agreement. One of the Clarks, who was also an officer of Pico, testified that the supplemental agreement was "a more detailed clarification of the parking rights that the doctors were acquiring. . . ." In any event, what matters is not the plaintiffs' belief concerning their rights, but the existence thereof.

The fact that the supplemental agreement also provided for payment to Pico of a certain monthly sum "for the additional upkeep, repair and cleaning of the parking area" is of no moment. The owner of the servient tenement is under no obligation to maintain the easement for the benefit of the dominant tenement. (*Herzog* v. *Grosso,* 41 Cal.2d 219, 228 [259 P.2d 429].) As has been seen, several of the subleases on parcel B provided for the payment of a share of the maintenance of the parking facilities and it was only natural to provide that the plaintiffs would share in that burden.

It is plain that on appeal the supplemental agreement is a red herring. None of plaintiffs' rights as declared by the trial court derive from it.

## The Effect of the 1962 Leases

It will be recalled that before Geneva became the lessee of parcel B the 1958 lease to that parcel had been divided into two leases to correspond to certain deeds of trust. Walters, of course, is the lessor on both the 1962 leases, the Clarks and Pico are collectively referred to as "lessee." Geneva argues that because in 1962 Walters no longer owned parcel A, the "larger parcel of land of which lessor is the record owner and of which the herein described premises constitute a part,"

referred to in paragraph 16 of the 1962 lease, could not include parcel A.

▋ The problem with that argument is that the 1958 lease to parcel B was more than just a lease. It was a document containing a recorded grant to an easement and as such could not be wiped out without the consent of the new owners of part of the dominant tenement.

## Notice to Geneva

▋ In its brief Geneva says that "it freely admits" notice of the 1958 lease to parcel B, but claims error in the court's finding that it had constructive notice of the other two 1958 leases. It is claimed that because the 1962 leases to parcel B in effect made the 1958 lease "a completely extinguished document without any continued legal existence" there was somehow no duty of inquiry.

Perhaps the 1958 lease to parcel B was a nullity as a lease. As a recorded document granting an easement it remained in Geneva's chain of title which it could not ignore.

▋ In *Brown* v. *Copp*, 105 Cal.App.2d 1 [232 P.2d 868], it is said: "Whenever a party has information or knowledge of extraneous facts which of themselves do not amount or tend to show actual notice but which are sufficient to put a reasonably prudent man upon inquiry respecting a conflicting interest, claim or right, and the circumstances are such that the inquiry, if made and followed up with reasonable care and diligence, would lead to knowledge of the interest, claim or right which really exists, then the party is absolutely charged with constructive notice of such interest, claim or right. (*Olson* v. *Cornwell*, 134 Cal.App. 419, 428 [25 P.2d 879].)" (*Ibid.*, p. 6.)[9] It is obvious that the slightest amount of

---

[9]A portion of Tiffany, The Law of Real Property, section 1293, pages 77 to 80 reads as follows: "In so far as a purchaser has actual or constructive notice of a conveyance or other instrument executed by one previously owning or claiming to own the land, he is charged with notice of all matters stated or referred to in such conveyance, which may possibly affect the title, and he is bound to make any inquiries or researches suggested by such statements or references. For this purpose a purchaser is charged with notice of any conveyance which occurs in the chain of title under which he claims, that is, he is charged with notice of all matters stated or referred to in any conveyance which is essential to support his claim, without reference to whether he has actual notice of such conveyance. And the fact that such conveyance in the chain of title is not of record, or is improperly recorded, is ordinarily immaterial in this regard. And he is charged with notice of the contents, not only of instruments in his chain of title, but also of other instruments referred to in such instruments, although not of record, in so far, at least, as it is reasonably possible for him to acquire knowledge thereof. And it follows

inquiry would have disclosed the existence of the other two 1958 leases which, if they do create an easement appurtenant to parcel A, would have informed Geneva more than adequately. Both Clarks and Walters were alive and testified at the trial. We know of no pertinent evidence which Geneva could not have discovered.

In the statement of facts at the beginning of this opinion we have set forth the provisions of various documents which were received by Geneva and which, in themselves, should have put it on notice of plaintiffs' parking rights. In their brief plaintiffs refer to many other additional facts. We think it is unnecessary to discuss them in detail. Notice to Geneva was abundantly proven.

Reliance is placed on the fact that paragraph 16 in the three 1958 leases refers to "the presently existing parking area *adjacent* to the leased premises. . . ." The argument is that the 1958 lease to parcel B cannot create an easement on parcel B because it is not adjacent to itself. True, but the three 1958 leases must be read together. In each one, paragraph 16 refers to a "presently existing parking area adjacent to the leased premises" which premises, in turn, are recognized as part of a "larger parcel." It is hardly possible that the existing parking area could be adjacent to each of the three parcels, but not within any of them.

### Notice Through Possession and Use

Geneva attacks a portion of a finding to the effect that at the time when it acquired its interest in parcel B it knew that the parking areas on that parcel were "then in use and being used by the Lessees, sublessees and tenants of the larger parcel, their tradespeople and the public generally."

This finding might be troublesome if the court had found in favor of plaintiffs on a theory such as adverse user. It appears that the use of parking on parcel B by possessors of parcels A and C was sporadic, at best. Such is not the case, however. As we interpret the finding the court merely found that Geneva

---

that notice of a prior conveyance thus acquired by reference thereto in the chain of title is sufficient to defeat any claim of priority based on the failure to record such conveyance. Being put upon inquiry by the recital or statement in a conveyance in the chain of title, the purchaser 'is bound to follow up this inquiry, step by step, from one discovery to another and from one instrument to another, until the whole series of title deeds is exhausted and a complete knowledge of all the matters referred to and affecting the estate is obtained. Being thus put upon inquiry, the purchaser is presumed to have prosecuted the inquiry until its final result and with ultimate success. . . .' "

knew of whatever parking was, in fact, being done. In any case, the correctness of the judgment in no way depends on this finding, but is based on the documentary evidence.

At this point we direct attention to a rather curious feature of the proceedings below: parol evidence concerning the intentions of Walters and the Clarks at the time of the execution of the 1958 leases was freely offered and received. Indeed the only objection to such evidence which we have run across was made by the attorney for plaintiffs! On appeal both parties rely on their interpretation of such evidence to support their positions. Although it seems plain that the trial court's findings on any factual issue developed by the parol evidence would have to be upheld, we do not rely on them. Our interpretation of the respective rights of the parties is based entirely on the written instruments and the undisputed extrinsic evidence. It would therefore be the same even if the trial court had arrived at a contrary result. (*Parsons* v. *Bristol Dev. Co.*, 62 Cal.2d 861, 865-866 [44 Cal.Rptr. 767, 402 P.2d 839].)

### Reformation

■ Geneva complains about the reformation of the unrecorded supplemental agreement. Since the judgment expressly provides that Geneva is not affected thereby, it is obviously not aggrieved.

### Damages

The award of nominal damages is attacked on two grounds: that plaintiff had no easement and that the facts do not establish damages.

The first ground has been disposed of. ■ The second must fall, since it is entirely unsupported by argument or reference to the record. The reporter's transcript alone is over one thousand pages long. The point is deemed abandoned. (*Du Zeff's Hollywood Inc.* v. *Wald*, 235 Cal.App.2d 678, 681-683 [45 Cal.Rptr. 584].)

In any event, it seems obvious that Geneva's assertion of a power to exclude plaintiffs from the parking area which, as a practical matter, deprived them of the effective use of their land for a period of several years, makes Geneva liable for some damages as a matter of common sense. Since plaintiffs' property was never developed there was no occasion for Geneva to obstruct the easement by physical barriers.

### Findings on Motion for New Trial

■ At the motion for a new trial the court made an

additional finding as follows: ''The Court finds that the lease-hold estate demised to the defendant Geneva Development Corporation under the two 1962 Leases on Parcel B did not include 'the presently existing parking area' located on Parcel B, as said parking area is defined in the present Findings of Fact, excepting only the right to use the parking area during the term of said Leases, in common with Lessor and any other lessees or tenants or any part of Parcels A, B and C.''

The court did not change the judgment after making this additional finding. If the sense of the finding is that Geneva's leasehold is burdened by the easement appurtenant to parcel A, it is entirely correct and in accord with this opinion. Literally read, however, it seems to deny Geneva the possessory interest it acquired under the 1962 leases as far as the parking area is concerned. Read in that fashion, it is incorrect, since Geneva clearly acquired all possessory rights, subject only to the parking easement. Even so, however, since the finding in no way affects the judgment it is immaterial.

The judgment is affirmed.

Hufsteder, J., and Stephens, J., concurred.

A petition for a rehearing was denied September 7, 1967, and appellant's petition for a hearing by the Supreme Court was denied October 11, 1967.