[Civ. No. 18468.   Second Dist., Div. Three.   Dec. 5, 1951.]

GRACE C. HOWARD et al., Appellants, v. GENERAL PETROLEUM CORPORATION et al., Respondents.

John N. Metcalf and Elon Gilbert Galusha for Appellants.

D. W. Woods, J. M. Jessen, Martin J. Weil and Cree & Brooks for Respondents.

SHINN, P. J.—This is an appeal from a judgment of nonsuit rendered after the action for the recovery of oil royalties had been fully tried and all the evidence of the defendants, as well as that of the plaintiffs, was before the court. We are satisfied that the judgment should be reversed with instructions to the trial court to make findings and conclusions of law and to render judgment thereon. ■ The evidence of plaintiffs, when given full credit and effect, would have entitled them to some relief. It was therefore error to grant a nonsuit. The evidence of the defendants, however, presented the transactions in a different light. The entire case was before the court, the evidence of the defendants should have been considered and the court should have made findings and conclusions in accordance with statutory procedure.

Plaintiffs were the owners of Lot 18 in Block 19, of Athens in the city of Los Angeles, in December 1932, when they sold it to General Petroleum Corporation, having derived title as surviving wife and children of William J. Howard. On Feb-

ruary 11, 1925, the administrator of the estate of Mr. Howard as lessor of Lot 18, and Edith Griswold and Nellie B. Radcliffe as lessors of Lot 19 adjoining, entered into a community oil and gas lease with Walter H. Fisher, as lessee. The term of the lease of Lot 18 was 20 years, with the privilege in the lessor or assigns to extend the term beyond 20 years, and of Lot 19, 20 years and so long thereafter as oil and gas should be produced from said Lot 19 in paying quantities. The owners of Lot 18 did not elect to extend the term of the lease and it expired as to that lot on February 11, 1945. Royalty was to be paid to the lessors at the rate of one eighth of production, one half to the owner of Lot 18, and one half to the owners of Lot 19, whether production be from one lot or the other.

Fisher Petroleum Corporation, as assignee of Fisher, brought in a well in 1925 on Lot 19, and paid royalties to all lessors until the 1st of April, 1926. On March 27, 1926, Fisher Petroleum Corporation assigned the lease to defendant, General Petroleum Corporation, then known as General Petroleum Corporation of California. This defendant operated the well and paid royalties to December 1, 1932. On October 26, 1932, General Petroleum bought Lot 19 and conveyed it to R. P. Conney, December 1, 1932. On January 11, 1933, General Petroleum recorded a deed of plaintiffs to Lot 18, dated December 1, 1932, paying therefor $1,000 and other consideration. Plaintiffs have retained the consideration paid to them and have not rescinded or attempted to rescind the sale. General Petroleum conveyed Lot 18 to Mr. Cooney January 10, 1933, and on the same day recorded an instrument by which it purported to surrender the lease and all of its rights thereunder. On January 24th, Mr. Cooney entered into an oil and gas lease of Lot 19 with defendants Jack Herley and Paul L. Kelley, who reconditioned the well and have operated it since that time, paying royalties to the lessor but none to the plaintiffs herein. This action was brought on September 15, 1948, to recover damages in the amount of royalties on the production from the well on Lot 19 since December 1, 1932.

The complaint alleged that General Petroleum represented to plaintiffs that the well was not producing oil or gas in paying quantities, and that it was the intention of General Petroleum to abandon the same; that plaintiffs believed the representations and in reliance thereon sold their lot to General Petroleum; that the representation was false and made with fraudulent intent; that plaintiffs were and ever since have been residents of the State of Michigan, and inexperienced in

business; they made no inquiry as to whether the well had been abandoned and refrained from inquiry because they believed the alleged representation of General Petroleum; that on May 1, 1948, they were informed by one Guy N. Stafford that the well had not been abandoned; they appointed Stafford as their attorney in fact and as such he instituted the present action. It was alleged, further, that plaintiffs have not disposed of their right to receive royalty from the well on Lot 19. Defendants answered, denying the allegations of fraud on the part of General Petroleum and pleading numerous defenses, among which were those of the statute of limitations and laches. It was alleged that in the purchase of Lot 18 General Petroleum acquired all rights of the grantors to receive royalty under the lease; also that when General Petroleum acquired both lots the leasehold interest was merged with the fee. The answers pleaded General Petroleum's surrender and abandonment of the lease by the instrument recorded January 10, 1933.

The action was duly brought to trial; plaintiffs introduced their evidence, consisting of certain documents and the depositions of two of the plaintiffs. When plaintiffs had rested their case, defendants made a motion for a nonsuit. The settled statement on appeal reads in part as follows: ''The Court then suggested that the defendants put on their evidence, for consideration by the Court in event the motion for non-suit was denied, in order that the cause might be decided without further appearance by the parties. The defendants accepted the suggestion and thereupon the defendant General Petroleum Corporation, introduced the following documentary and oral evidence.'' (Five written exhibits.) As shown by the settled statement defendants also introduced the testimony of several witnesses, one of whom was at the time of the transaction in question, secretary of General Petroleum, another, a vice president and general manager of production, and a third, manager of the land department. The testimony of these witnesses was to the effect that in 1932 the corporation was operating 18 wells in the Athens field, that all of them were in very bad condition and were operated at a loss in 1931 and 1932; that it was determined to abandon all said wells and to discontinue operations in the Athens field; that it proceeded to abandon all the wells except four, one of them the well on Lot 19; that it was determined that it would be less expensive to sell the four wells with all equipment, than to abandon them by pulling certain of the casing, flooding the

wells, dismantling the derricks and removing the machinery. The four wells and equipment were sold to Mr. Cooney for $6,500. Mr. Cooney at the time was engaged in salvaging oil well equipment and selling it. General Petroleum has had no interest in the well or the property since the same were sold to Mr. Cooney. Following a narrative of the testimony, the settled statement reads: ''Defendant General Petroleum Corporation offered no further evidence and rested. The defendants Jack Herley and Associates offered no additional evidence and rested.

''The Court then announced that if the motion for non-suit was denied, the argument should be upon briefs, plaintiffs' brief filed within ten days after Notice of denial of said motion for non-suit, the defendants briefs within ten days thereafter, and plaintiffs' closing brief within five days thereafter, to which the parties agreed.'' Thereafter, the court granted the motions for nonsuit and entered judgment dismissing the action.

It is a most unusual procedure in a nonjury case for the court to grant a nonsuit after the complete evidence of the parties has been received. ■ The purpose of a nonsuit is to save the time, effort and expense of presenting a defense when the plaintiff has failed to make out a case. ■ After the evidence of all parties is in, the court is required to make findings upon the material factual issues. (Code Civ. Proc., § 632.) ■ However, if the court fails in this duty and grants a nonsuit, the plaintiff is not prejudiced if his case would be defective even if the factual issues were decided in his favor. ■ Where issues of fact are presented upon complete evidence, the granting of a nonsuit is improper unless justified by some rule of law under which it is unnecessary to decide the issues of fact. (*Karallis* v. *Shenas,* 41 Cal.App.2d 694 [107 P.2d 395].) Although it was error for the court, after hearing all the evidence, to fail to decide the factual issues, the question here is whether independently of those issues there was a fatal weakness in plaintiffs' case.

■ Plaintiffs contend that when they sold Lot 18 to General Petroleum they did not sell or transfer their royalty right under the community lease and that they still retain that right, citing *Tanner* v. *Title Ins. & Trust Co.,* 20 Cal.2d 814 [129 P.2d 383]. General Petroleum claims it purchased the leasehold interest of plaintiffs as well as the fee title and thus acquired their royalty right. Plaintiffs introduced their deed in evidence. It was merely a conveyance of Lot 18 and

did not purport to transfer their royalty interest. There was nothing in their evidence which indicated an intention to sell any royalty rights under the lease although it is evident that they believed the well was to be abandoned and operations under the lease discontinued. Viewing this evidence in the light most favorable to plaintiffs, it appears to us to be insufficient to prove that plaintiffs parted with their royalty right. And if they did not, the right to receive royalty endured unless it was terminated by some means other than by transfer to General Petroleum.

In some respects the respondents rely upon defenses based entirely upon their own evidence. We have found the situation to be confusing and we are led to wonder whether the trial court, having all the evidence before it, was successful in distinguishing between the evidence of plaintiffs, which alone was to be considered, and the evidence of the defendants.

In determining whether the judgment should be reversed we have only the plaintiffs' evidence to consider. But in discussing what was the duty of the court, with respect to a complete disposition of the issues, and in explanation of our proposed judgment remanding the case for the limited purpose of making findings and conclusions and a new judgment, it will be necessary also to refer to the evidence that was introduced by the defendants.

If plaintiffs did not sell their royalty right they necessarily admit the validity of the transaction, since they are satisfied with the price they received for the fee title. In that view of the transaction, the fraud issue was irrelevant, inasmuch as plaintiffs would have lost no rights through that transaction which they now assert.

Our holding that the evidence of plaintiffs did not prove they had sold their royalty brings us to the question whether it appeared from their evidence that they had abandoned their rights under the lease through their agreement with General Petroleum. It does not appear from the evidence of plaintiffs that they understood the nature of royalty rights under a community lease and intended to abandon them. Although it is clear that they believed General Petroleum was operating the well at a loss at the time they sold Lot 18, they nevertheless alleged, and their evidence tended to prove, that they acted under the belief that it was to be abandoned. If there appeared to be an abandonment by mutual consent, there was still a question whether it was voluntary. The evi-

dence of plaintiffs was sufficient to show, prima facie, that there was no voluntary abandonment.

The next question is whether, from plaintiffs' evidence alone, the court could properly have determined that the action was barred by the statute of limitations. There are two phases of this question. If plaintiffs still retain their royalty rights, they are suing for royalties based upon production since December 1, 1932, or for damages in an equal amount. This action was brought September 15, 1948. Royalties accruing after September 15, 1944, would be within the four-year statute. The term of the lease expired February 11, 1945. Claims for any amounts that may have fallen due to plaintiffs during this interval would not be barred. However, as to royalties accruing prior to September 15, 1944, plaintiffs claim the statute of limitations was tolled by their ignorance of their rights consequent upon the alleged fraud of General Petroleum. In view of our holding that the court, from plaintiffs' evidence, should have concluded that the royalty rights had not been disposed of, it would have been error to hold that claims to royalties accruing since September 15, 1944, were barred, and in view of the excuses offered by plaintiffs for their delay in bringing suit, the court could not properly have held that the claims to royalties accruing prior to September 15, 1944, were barred, without passing upon the fraud issue and the legal sufficiency of the excuses offered for the delay. Inasmuch as it appeared, prima facie, that plaintiffs still have royalty rights, and it would have been error to hold their claims barred in their entirety, we express no opinion as to whether the evidence of the plaintiffs, if believed, would be sufficient to toll the statute of limitations with respect to claims to royalties accruing prior to September 15, 1944.

A separate defense is urged by defendants based upon the recording by General Petroleum January 10, 1933, of an instrument purporting to surrender the lease. This fact appeared only in the evidence of the defendants.

We conclude therefore that the nonsuit was not warranted upon the theory that plaintiffs had sold their royalty rights or had abandoned them, or that the action was barred by the statute of limitations. If we were merely reversing the judgment, our opinion would end at this point. But inasmuch as the judgment is to be reversed with directions to make findings and conclusions upon the evidence already submitted,

we think we should state our reasons for disposing of the appeal in that manner.

The evidence of the defendants tended to show that General Petroleum acted in good faith in abandoning its operations in the Athens field and in concluding that its operations there could not be carried on profitably. Although the well on Lot 19 was sold and not abandoned, and information as to that fact was not conveyed to the plaintiffs, the question whether General Petroleum acted in good faith or with fraudulent intent was an issue which was presented by the evidence of the defendants. Their evidence also developed that when General Petroleum decided to purchase Lot 18, the manager of its land department addressed a letter to plaintiff, Grace C. Howard, mother of the other plaintiffs, offering to assume taxes and bond liens in a large amount, and to pay $1,000 cash for title to the lot and for the release of all further obligations under the lease, to which letter Mrs. Howard replied, accepting the offer, ''for the property and lease of lot 18, block 19 Athens.'' Defendants also introduced an agreement entered into at the time of the sale by which plaintiffs released General Petroleum from all further obligations under the lease. Since the motions for nonsuit should have been denied, the court should have given consideration to the evidence of the defendants. It would have been necessary in order to properly dispose of the case to make a finding as to whether plaintiffs sold their royalty interest to General Petroleum. The evidence which required a finding upon that issue was such that if the court found there was not an outright sale of the royalty, it would have been required to make a finding as to whether there was a mutual abandonment of the lease. If there was a finding that the lease was abandoned, it would have been necessary to determine whether it was voluntarily abandoned by the plaintiffs. For all the reasons stated, it was necessary that the court determine the fraud issue. There was also to be considered the attempted abandonment of the lease by General Petroleum at the time it sold Lot 18 to Mr. Cooney. If it had been found that the lease was still in existence it should have been decided whether the attempted cancellation was effective. All defendants pleaded laches. That issue should have been determined.

We have not given separate consideration to the case of the defendants, other than General Petroleum. While it is not clear upon what theory plaintiffs seek to hold the lessees of Mr. Cooney, by virtue of their claimed rights under the

General Petroleum lease, we assume that these lessees would be proper parties to an accounting of the royalties they have paid, even though they were not shown to be under any liability for having paid them to someone other than plaintiffs.

The judgment is reversed, with directions to the trial court to make findings and conclusions of law and to render judgment thereon.

Wood (Parker), J., and Vallée, J., concurred.