SNIDER et al. v. SNIDER.

No. 33916.    March 24, 1953.

*255 P. 2d 273.*

Carder & Carder, Hobart, for plaintiffs in error.

R. Place Montgomery, Hobart, and Emmett Sasseen, Cordell, for defendant in error.

ARNOLD, J. This is a suit to quiet title as against a stipulation for the payment of royalty entered into by owners of undivided mineral interests and directed to the oil lessee dividing royalty payments on a different basis than that of ownership. The undisputed facts are:

At the time of his death, and at the time of the execution of the stipulation, Elias F. Snider owned an undivided one-fourth of the surface and an undivided one-fourth of 80 acres of the minerals under the southwest quarter of section 10, township 7 north, range 17 west, Kiowa county, and his son, Louis Fort Snider, owned the remaining undivided three-fourths of the surface and three-fourths of the 80 acres of minerals under said land. One-half or 80 acres of the minerals had been sold by father and son prior to the father's death. Said land was developed for oil which was being purchased by the defendant Johnson Oil Refining Company, a corporation. The father and son made a stipulation as to payment of royalty accruing to them, as follows:

"Whereas, the Undersigned, Elias F. Snider and Louis Fort Snider, are owners of the surface right and an undivided mineral right, interest and title in and to the following described real estate, to wit:

"The Southwest Quarter of Section 10 in Township 7 North, Range 17 West of the Indian Meridian, Kiowa County, Oklahoma, and whereas it is desired to provide for the payment of royalty from actual production of oil, gas, or any other mineral thereon.

"Now, Therefore, it is agreed between the parties that without regard to the actual ownership of said land and right in said undivided mineral interest that all royalty shall be paid and divided among the parties as follows:

"That there shall be paid to the said Elias F. Snider three-fifths of all such royalty payments and to the said Louis Fort Snider two-fifths of all such royalty payments. The wives of the respective parties being Nellie R. Snider the wife of Elias F. Snider and Clara Snider the wife of Louis Fort Snider have joined in the execution of this stipulation and agreement to avoid any question arising as to homestead, community or any other arising questions as to rights in said real estate.

"In Witness Whereof, the parties have hereunto set their hands this 21st day of January, 1946."

The Sniders abided by this agreement and accepted payment of royalties according to the terms of the foregoing stipulation until the date of the death of Elias. Shortly after the death of his father Louis wrote a letter to Johnson Oil Refining Company notifying it that he was canceling the division order or stipulation theretofore executed by him and his father and directing it thereafter to pay royalties accruing in accordance with the ownership of the land. Thereafter, the oil company impounded the three-fifths of the royalties which had theretofore been paid to Elias, the father. Louis, the son, then brought this suit against his stepmother, Nellie Snider, surviving widow of Elias, and Thomas M. Sparks, administrator of Elias's estate, and the oil company above mentioned, seeking to cancel the stipulation above quoted, alleging that it was void for three reasons.

(1) It was made and entered into without consideration.

(2) It has no specific period of duration and is terminable at the pleasure of either party.

(3) It terminated upon the death of Elias Snider.

Cancellation of the instrument was prayed in conjunction with a prayer to quiet the title of plaintiff to the three-fourths of the minerals owned by him and a prayer that the oil company ac-

count for all royalties impounded by it and that same be paid according to the ownership of the minerals.

Johnson Oil Refining Company answered admitting that it was the purchaser of the oil produced on the land; and referring to the stipulation as a division order it alleged that it had been signed by Elias F. Snider as to three-fifths of the royalty interest owned by the Sniders and by Louis Fort Snider as to two-fifths of said royalty interest, and that it was impounding the royalties accruing to the interest of Elias under said division order until the controversy as to ownership thereof should be settled, that its only interest was that of purchaser of the oil from said premises. The other defendants, Nellie Snider and Thomas M. Sparks, filed no answer.

At the trial of the cause the stipulation was introduced in evidence and Louis, the plaintiff, testified generally to the state of facts above set forth and further testified that his father paid him no consideration for the execution of the above-quoted stipulation. Defendants Nellie Snider and Thomas M. Sparks, administrator, objected to this testimony by him that there was no consideration paid for the execution of the stipulation on the ground that Louis was an incompetent witness under 12 O.S. 1951 §384, commonly known as the "Dead Man" statute.

Nellie Snider in an effort to show consideration for the execution of the stipulation testified very indefinitely. Her attorney finally and apparently in lieu of her testimony designed to prove consideration made an offer of proof as follows:

"Come now the defendants and offer to prove, if permitted, that as a matter of fact they offer to show that Elias F. Snider purchased with his own funds the north 80 acres of land herein involved and made it a gift to his son, and that they jointly inherited the south eighty by reason of which Elias F. Snider acquired forty acres which he owned at the time of his death, and plaintiff owned eighty acres by gift and forty acres by inheritance, and that in addition thereto that he also gave him the amount of $800 over and above one-half of the royalty sold."

The offer was objected to, the objection was sustained, and exceptions to the ruling taken by Nellie Snider. If the testimony had been received to support the offer made it would have proven only that Elias had at some time in the past given Louis 80 acres of land and $800 in cash. Such proof alone would not constitute proof of consideration for the execution of the stipulation. This is the only theory on which it is claimed that the proof would have been competent. No other evidence was introduced by either side.

The court entered judgment canceling the stipulation as to payment of royalty as of the date of the death of Elias F. Snider and fixed the mineral interests owned by Louis Fort Snider and his father's estate according to their undisputed ownership at the time of the execution of the stipulation. Johnson Oil Refining Company was ordered to pay all royalty theretofore impounded and thereafter to accrue to the court clerk to be disbursed on the further order of the court. From order overruling motion for new trial, defendants Nellie R. Snider and Thomas M. Sparks, administrator, bring this appeal. The oil company complied with the order of the court and for this reason was not made a party to this appeal.

Plaintiffs in error, defendants below, here contend that the purported contract or stipulation constitutes a gift inter vivos; that said purported contract or stipulation constitutes a conveyance of mineral interest or assignment of royalties in perpetuity and is not subject to cancellation or revocation; that Louis Fort Snider was an incompetent witness under the "Dead Man" statute, supra, to testify that he received nothing of value for the execution of the stipulation here in question; in this connection, they argue that

234

the evidence of Louis that there was no consideration for the execution of the stipulation should have been stricken as was sought by defendants Nellie Snider and Thomas M. Sparks, administrator, leaving proof of consideration presumptively by 15 O.S. 1951 §114. Though error of the court in rejecting the offer of proof above quoted is set forth in the motion for new trial and its rejection is set forth among the assignments of error here, no argument is made that the rejection of the offered testimony constitutes reversible error.

Defendants did not plead below that this stipulation was a gift inter vivos and offered no testimony of any kind to support any such contention. On the contrary, an offer of proof was made by Nellie Snider designed to show consideration for the execution of the stipulation as hereinbefore indicated. Defendants cannot for the first time present this defense on appeal. Staner v. McGrath, 174 Okla. 454, 51 P.2d 795.

It is certain that this stipulation is not a conveyance of mineral interest. Nowhere does there appear a granting clause of any kind in the stipulation. Nor is it an assignment of royalties in perpetuity. There is no word of assignment in the instrument, no duration stated, no clause making the contract binding upon the heirs, personal representatives, or assigns of the parties.

The purpose of the instrument and the intention of the parties with reference thereto is easily seen within the four corners of the instrument itself. It was a stipulation between father and son designed to authorize the payment by the oil company of accruing royalties on a different basis than that of ownership by the parties. In practical effect, it is a division order and as such subject to termination by either party. Whether there was or was not consideration for the execution of the stipulation would not affect the right to terminate upon notice where no specified duration is set forth in the division order and no proof is made as to dura-

tion. For analogous reading see Marlarnee v. Pauline Oil & Gas Co., 133 Okla. 192, 271 P. 937; Welch v. Pauline Oil & Gas Co., 133 Okla. 122, 271 P. 651. It is not necessary to pass upon the question of whether it was error to permit Louis to testify that his father paid him no consideration because the judgment on its face shows it was based upon the court's determination that the death of Elias canceled the stipulation. The presumption of consideration for the written instrument given by the statute, supra, if applicable here, would have no effect upon the right to terminate where no duration is stated or proven.

At the death of the father the division order theretofore executed by him terminated. At the time of his death title to the minerals in that land owned by him immediately vested in his heirs. Accruing royalties thereafter could not be paid to any other person than the heirs or their representative. A stipulation to pay royalties on a different basis than ownership would not be binding on the new owners, where no period of duration was made in the instrument which might be binding upon them. It is evident that the trial court took this view of the instrument in its judgment terminating the stipulation as of the date of the death of the father.

Affirmed.

HALLEY, C.J., JOHNSON, V.C.J., and CORN, DAVISON, O'NEAL, WILLIAMS, and BLACKBIRD, JJ., concur.