[Civ. No. 21435. Second Dist., Div. Two. May 24, 1956.]

GEORGE E. AGAJANIAN et al., Appellants, v. PETER CUCCIO et al., Respondents.

Jerrell Babb for Appellants.

William Bronsten for Respondents.

FOX, J.—Plaintiffs sued for specific performance, or, in the alternative, for damages. Defendants filed a cross-complaint for ejectment and to quiet title. The court denied specific performance and refused to award damages to plaintiffs. It rendered judgment in favor of the cross-complainants and quieted their title. Plaintiffs appeal.

On October 4, 1951, Peter Cuccio and Anthony Pernechele leased certain real property to plaintiff George E. Agajanian, the pertinent provisions of the lease reading as follows:

"The Lessor's agrees to lease five acres of land located at Earl & Spencer-Redondo, Southwest Corner Lot 41 for the term of One Year and option of Nine more years, this Lease can be terminated from Year to Year upon mutual agreement by both parties, Lessor's and Lessee at $120.00 Dollars Per year payable in advance, also this Lease is subject to the Lease which certain Oil co. holds, and that the Landlord is not responsible for any liability.

"The Lessor's agree to give the Lessee two Years option to purchase property located at Earl & Spencer for the sum of $10,000 Dollars *Cash Deal only*. (Ten Thousand Dollars)

"This land is leased for the purpose of agricultural and Cattle raising only."

The *habendum* clause states that the term of the lease is for one year: from the 4th of October, 1951, to the 4th of October, 1952.

Mr. Cuccio and his wife, Minnie, owned a one-half interest in this property as joint tenants; Mr. Pernechele and his wife, Jennie, owned the other one-half interest, also as joint tenants. Neither wife, however, signed the lease to Mr. Agajanian.

In September, 1953, Mr. Agajanian decided to exercise the option to purchase the property. He served a written notice on Mr. Cuccio and Mr. Pernechele to that effect. It called upon them to furnish a grant deed conveying said property, free and clear of all liens and encumbrances, "except any cloud that may be created thereon by a certain oil and gas lease now outstanding against said premises, vested in you, Peter Cuccio and Anthony J. Pernechele, . . ." As a means of effectuating the purchase, plaintiff opened an escrow at a local bank. The buyers' instructions provided: "It is agreed between buyer and seller that the existing oil lease on subject property is to be assigned to the buyer herein." Mr. Cuccio and Mr. Pernechele and their respective wives signed the sellers' portion of the escrow instruction which recited that they approved and accepted the terms and conditions contained in the buyers' instructions. At the same time, however, defendants executed additional instructions, the typewritten portion of which reads in part as follows: "All instructions in this escrow are acceptable, with the following amendment. The Seller's hereby amend these escrow instructions as follows: Seller agrees to sell all property with the reservations of oil and mineral rights and the oil lease presently in existence to be retained by the sellers . . ." Plaintiffs refused to approve these additional instructions. It developed at the trial[1] and the court found[2] that the oil lease in question was a community lease covering this and other property.

The court found, in effect, that the oil lease was not included

---

[1]During the trial judge's interrogation of defendant Peter Cuccio concerning the lease the witness stated: ". . . It is a community lease, is what it is, your Honor.

"THE COURT: Is the well on your property?

"THE WITNESS: No, not on my property. It is next door."

[2]Finding IX reads as follows: "Finding of this Court . . . is that the only evidence introduced by the plaintiffs as to the market value of said real property described in plaintiffs' Amended Complaint, together with the defendants' rights under a community oil lease which covers the property and other property, is of the sum of $10,000.00."

In the judge's memorandum of decision he stated: "Both parties knew there was an existing community oil lease which included these premises."

in the so-called option. This question represents the real heart of the lawsuit.

Appellants' position is that they have an option that is in all respects sufficient and enforceable and that they "have established their rights in the community oil lease since they are entitled to be owners in fee of the land." They argue that "It follows as a matter of law that with the performance of said contract plaintiffs will become owners in fee of the said real property and thus entitled to the mineral rights thereof." This argument is sound where the lease covers only the property that is sold. "The right thus created in the lessee is a *profit a prendre*. [Citations.] The royalty return which the lessee renders to his lessor for a *profit a prendre* in land is analogous to rent, an incorporeal hereditament. [Citations.]" (*Tanner* v. *Title Ins. & Trust Co.*, 20 Cal.2d 814, 819-820 [129 P.2d 383].) In the absence of a reservation by the seller, such a royalty interest passes to the grantee of the fee on a sale of the real property covered by the lease. (*Tanner* v. *Title Ins. & Trust Co., supra,* p. 820.) Other factors, however, must be considered where, as here, the land in question is, along with other land, in what is commonly known as a community oil lease. By executing the community lease, the defendants herein and each of the other lessors assigned or conveyed to his colessors a percentage interest in all oil produced on his land by the lessee during the lease. The consideration for that transfer was the similar mutual assignments of the other lessors. ▮ "The royalty interest thus transferred by each landowner to his colessors is an incorporeal hereditament in gross . . ." (*Tanner* v. *Title Ins. & Trust Co., supra,* p. 820.) Such interest "does not follow the conveyance of the lessor's land, but can only be conveyed by a specific transfer of that interest." (*Tanner* v. *Title Ins. & Trust Co., supra.*) In discussing the interests created by a community lease, the court, in *Brown* v. *Copp,* 105 Cal.App. 2d 1, 5 [232 P.2d 868], points out that each of the landowners conveys "to his colessors a percentage interest in all oil produced on his land by the lessee during the life of the lease," and that this is "an estate in real property." The court then states: "This estate does not follow the conveyance of the lessor's land but can only be conveyed by a specific conveyance of that interest. [Citations.] (P. 6.) To the same effect is *Friedrich* v. *Roland,* 95 Cal.App.2d 543, 549 [213 P.2d 423].)

Applying these principles to the case at bar, it is plain that,

assuming plaintiffs had an enforceable option, a conveyance of the land alone would not carry with it the royalty interests of the owners in the community oil lease. The so-called option that Mr. Cuccio and Mr. Pernechele signed does not expressly purport to include the royalty interests of the owners in any community oil lease covering the property. It is therefore clear that plaintiffs are not entitled to the interest of the defendants in the community lease. Plaintiffs do not desire specific performance unless the oil rights are included. It follows that the court properly refused to decree specific performance. Plaintiffs make no contention that they are entitled to damages in lieu of specific performance.

Plaintiffs vainly argue that the court erred in deciding the option was ambiguous and in admitting parol evidence to clarify it and as an aid in ascertaining the intention of the parties. The ruling was correct for the option is obviously ambiguous and unclear in several particulars. We need point out only one: the document containing the option made reference to an oil lease on the property; it did not reveal whether the lease covered oil on defendants' property only or whether it also included additional land as a community lease. Parol evidence was necessary to a clarification and determination of this point, which is, as we have seen, an important factor in the case.

Plaintiffs argue that defendants became bound to transfer their interest in the oil lease when they signed plaintiffs' escrow instructions, which provided that "the existing oil lease on subject property is to be assigned to buyer." This argument would be persuasive if it were the whole story, but it is not. Concurrently with signing the plaintiffs' escrow instructions defendants executed additional escrow instructions agreeing to sell the land but providing, *inter alia,* that "the oil lease presently in existence to be retained by the sellers." That the initial and additional instructions were signed as a part of the same transaction is made clear by the testimony of Mr. Coveney, who handled the escrow. He was asked this question: "And did they [the defendants] sign the original and amended instructions simultaneously, at the same time?" The answer was in the affirmative. It is apparent that the reservation of the oil lease made by the defendants in the additional or so-called amended instructions was intended by them to be and in fact was a condition of their approval of the buyers' instructions, which condition the latter did not accept. Hence no contractual rights matured

out of the escrow instructions, since the condition upon which the escrow instructions would be binding was not fulfilled. (*Paratore* v. *Scharetg*, 53 Cal.App.2d 710, 713 [128 P.2d 560].) This is the view the trial court took of the escrow phase of the transaction. It is fully supported by the evidence.

It is unnecessary to consider other points discussed in the briefs.

The judgment is affirmed.

Moore, P. J., and Ashburn, J., concurred.

A petition for a rehearing was denied June 15, 1956, and appellants' petition for a hearing by the Supreme Court was denied July 18, 1956.