Richard GARVIN, Everett Garvin, also known as E. C. (Pete) Garvin, John B. Garvin, Madge Garvin Vandever, Lillian Estelle Bible, Lucretia May Richards, Herbert Garvin, Roy D. Garvin, Oma Pearl Garvin, Winston B. Garvin, and James Robert Garvin, Plaintiffs in Error,

v.

H. C. PETTIGREW, Defendant in Error.

No. 36797.

Supreme Court of Oklahoma.

June 17, 1958.

Rehearing Denied March 8, 1960.

Second Petition for Rehearing Denied April 5, 1960.

Lee Welch, Antlers, K. C. Beauchamp, Jr., Duncan, for plaintiffs in error.

Bailey & Hammerly, Chickasha, for defendant in error.

DAVISON, Justice.

This is a suit to quiet title to certain lands in Stephens County, Oklahoma, brought by the plaintiff, H. C. Pettigrew, against the defendants, Richard Garvin, Everett Garvin, also known as E. C. (Pete) Garvin, John B. Garvin, Madge Garvin Vandever, Lillian Estelle Bible, Lucretia May Richards, Herbert Garvin, Roy D. Garvin, Pearl Garvin, Winston B. Garvin, and James Robert Garvin. The parties will be referred to in the same order in which they appeared in the trial court.

The various parties therein named, owners of various contiguous tracts of land, each specifically therein described, entered into the following written contract, to-wit:

"Plaintiff's Exhibit D
"Contract

"State of Oklahoma

ss

"Stephens County,

"This contract, made and entered into, this the 10th day of May, 1923, by and between J. R. Garvin, and his wife, Lucretia M. Garvin; Thomas Pettigrew and his wife, Anna Pettigrew; James W.

O'Quin and his wife Lena O'Quin; and J. M. Littrell and his wife, Ella Littrell; and Corbett Littrell and his wife, Pearl Littrell,

"Witnesseth: That Whereas, J. R. Garvin and his wife, Lucretia M. Garvin are the owners of the following described lands, situated in Stephens County, Oklahoma, to-wit: (Specifically Described Lands) comprising 755 acres.

"Whereas, J. M. Littrell and his wife, Ella Littrell and Thomas Pettigrew and his wife, Anna Pettigrew, are the owners of the following described lands, situated in Stephens County, Oklahoma, to-wit: (Specifically Described Lands) comprising 1865 acres.

"Whereas, J. M. Littrell and his wife, Ella Littrell are the owners of (Specifically Described Lands) comprising 160 acres, and

"Whereas, J. M. Littrell and wife, Ella Littrell and Corbett Littrell and Pearl Littrell are the joint owners of (Specifically Described Lands) Comprising 320 acres, and

"Whereas, J. W. O'Quin and wife, Lena O'Quin, are the owners of an undivided ¼ interest in the oil and gas royalties on (specifically described lands) and

"Whereas, the parties hereto are desirous of combining their interests in any royalties accruing or to accrue from all the oil and gas that may be produced from the lands hereinbefore described, that is that each party hereto shall participate in the royalty, accruing or to accrue from the oil and gas produced from said above described lands, or any part thereof, in the proportion that their respective interests bear to the total number of acres embraced within the lands hereinbefore described, which interests have been fixed and agreed upon as hereinafter set forth.

"Now Therefore, in consideration of the sum of One Dollar, in hand paid, by each party to each of the other parties hereto, it is agreed:

"That J. R. Garvin and his wife, Lucretia M. Garvin shall be the owners of and entitled to 24⅓ per cent of the royalty accruing or to accrue from all oil and gas or either of them, which may be produced from the described lands, or from any part thereof.

"That Thomas Pettigrew and his wife, Anna M. Pettigrew, shall be the owners of and be entitled to 30⅓ per cent of the royalty accruing from all oil and gas or either of them, which may be produced from the above described lands, or from any part thereof.

\* \* \* \* \* \*

"It is agreed by and between all of the parties hereto that this contract shall in no wise interfere with or divest any party thereto of the right to separately lease his or her part of the lands hereinbefore described, for oil and gas purposes, and that the several interests set apart to each of the parties hereto, as hereinbefore provided, shall not attach to the royalties from oil and gas until oil and gas or either of them, has been produced from the above described lands, or from some part thereof, and any bonuses, down payments, and rentals accruing, or to accrue, from any oil or gas lease, now existing, or that may hereafter be executed, covering any part of the lands hereinbefore described, shall be the sole and separate property of the owner of that part of said lands, covered by such oil and gas lease or leases, and each party hereto disclaims any interest in that portion of the above described lands belonging to each of the other parties hereto, and each party hereto agrees and acknowledges that the only rights conferred, by this contract, upon each of them is that right to participate in the royalties accruing or to accrue from oil or gas or either of them, according to their percentage interest as hereinbefore set out, after said oil or gas has been produced from said lands or from any part thereof.

"This contract is in lieu of and supersedes all former contracts between the parties hereto or any of them, with reference to division of royalty from oil and gas, produced from the lands hereinbefore de-

scribed, and particularly the contract with reference thereto, recorded in Book 71, page 596, of the records of the County Clerk of Stephens County, Oklahoma.

"This contract, with all the rights and privileges thereof to inure to the benefit of our heirs, executors, administrators and assigns.

"In Witness Whereof, we have hereunto set our hands this 10th day of May, 1923."

Subsequent to the execution and recordation of the above quoted contract, the plaintiff became the owner of the land which is the subject matter of the present litigation. It consisted of 380 acres out of the lands in said contract described as owned jointly by the Littrells and the Pettigrews. The purpose of the litigation is an adjudication of whether or not plaintiff's said property is still burdened with rights which the Garvins acquired therein under the provisions of the contract. In March of 1930, the Garvins conveyed all of the lands owned by them to one T. L. Wade by a warranty deed containing no reservations or exceptions. The following year, Mrs. Garvin died leaving as her heirs, her husband and the named defendants herein, who were her children and grandchildren. Several months thereafter, Mr. Garvin and said T. L. Wade and others executed a quit claim deed to plaintiff to all of the property herein involved. In 1947, Mr. Garvin died, leaving as his heirs the defendants herein.

Plaintiff brought this suit in January 1953 seeking to quiet his title as against the heirs of the two Garvins and to determine the heirship of Mrs. Garvin. The defendants answered and claimed, as heirs of Mr. and Mrs. Garvin to be the owners of the right to participate in all oil and gas production from plaintiff's land in the same manner that their decedents were entitled under the terms of the contract. Trial was had to the court, resulting in judgment for defendants to the extent that they were entitled to participate in Mrs. Garvin's estate. Plaintiff's motion for new trial was sustained and the defendants have perfected this appeal.

Ordinarily, in reviewing the action of the trial court's order sustaining a motion for new trial, it is unnecessary for this court to determine the issues on the merits. But, in the instant case, only a pure question of law is involved. In the order appealed from, the trial court gave the following reasons therein as grounds for the decision granting a new trial to-wit:

"* * * said contract of May 10, 1923, involved herein, under which the said defendants claim herein and on which they claim, was and is entirely void and ineffective for any purpose under the rule and holding as announced and set forth in the case of Lathrop v. Eyestone, 170 Kan. 419, 227 P.2d 136, and because such contract was and is ambiguous and uncertain and violates the rule against perpetuties and too remote vesting. * *"

 In effect, the trial court granted a new trial for the reason that the plaintiff, and not the defendants, was entitled to judgment. Thus, the order amounted to a general finding for plaintiff. Although this court is committed to the rule that, in reviewing an order of the trial court sustaining a motion for new trial, the review will be confined to the reasons given by the trial court for granting the motion (Browne v. Bassett, 191 Okl. 22, 126 P.2d 705), if the reasons assigned require an examination of the record to ascertain whether the granting of the motion for new trial amounts to an abuse of discretion, an exercise of arbitrary power, or error as to some simple and unmixed question of law, this court will examine the record and if it reveals such condition, will reverse the trial court. Cooke v. Sinopoulo, 194 Okl. 352, 151 P.2d 791, 792. However,

"In the absence of abuse of discretion, arbitrary action or error with respect to some simple and unmixed question of law this court will not

disturb an order which grants a new trial." Cooke v. Sinopoulo, supra.

An examination of the record in the case at bar fails to disclose that the granting of a new trial was either an abuse of discretion, an arbitrary action, or an error as to some simple and unmixed question of law.

■ The contract here involved constituted a pooling agreement. It was so referred to in the record and in the briefs of the parties. It could not have been a conveyance of a mineral interest. Nowhere does there appear therein a granting clause of any kind. Nor was it an assignment of royalties in perpetuity. There was ·no word of assignment in it nor was any duration stated. Snider v. Snider, 208 Okl. 231, 255 P.2d 273. Defendants in their brief argue at length the importance of the provision that the contract with all rights and privileges should inure to the benefit of the heirs, executors, administrators and assigns of the parties. But, as pointed out in the Snider case, supra, that is merely one of the provisions necessary for an assignment of royalties in perpetuity. The others are lacking. In addition the contract specifically provided that "each party thereto disclaims any interest in that portion of the above described lands belonging to each of the other parties hereto."

After Mr. and Mrs. Garvin conveyed to Wade, they owned no realty to be contributed to the pool. Having nothing to contribute, they were not entitled to further participate. A very similar situation was before the Kansas Court in the case of Hover v. Cleveland Oil Co.,· 150 Kan. 531, 95 P.2d 264, 266, and, because the reasoning therein contained is so peculiarly applicable to the case here we quote it at length, as follows:

"The very essence of the agreement was that the contracting parties were owners of adjacent properties suitable to be explored and exploited for oil and gas, and that any resulting royalties should be divided proportionately to their respective acreages. When the Hovers parted with their property what did they have to contribute to the common pool of possible royalties? Nothing. The agreement had quite properly provided the oil royalties should be shared until it was changed by the parties. But that result would follow when they sold their property if the agreement had not mentioned it. After the Hovers disposed of their property there was no possibility that the Boyersmiths could thereafter get any benefit from the agreement of 1927. It was of no consequence that the cattle company filed a disclaimer and that its managing officers knew of the agreement of 1927 between the Boyersmiths and Hovers. They could have had no concern with that agreement. Neither was it of any significance that the Hovers continued to receive a portion of the Boyersmith Oil well royalties for several years after 1931."

To the same effect but not so nearly parallel is the case of Merrill Engineering Co. v. Capital Nat. Bank of Jackson, 192 Miss. 378, 5 So.2d 666. Upon a thorough independent investigation, we find no case in any jurisdiction where parties to a pooling agreement were permitted to participate in the production of minerals from other parts of the pool after they parted with title to the lands they agreed to contribute to the pool unless such lands had first been released therefrom. Equity demands that conclusion.

Therefore, at the times of their deaths, the Garvins had no right to participate in any oil or gas production from plaintiff's lands and none could descend to their heirs, the defendants herein. The trial court committed no error in vacating the judgment in their favor.

We need not here determine what rights in plaintiff's property were acquired by Wade when he purchased the Garvin land because he subsequently executed a quit claim deed to the plaintiff. Also, having reached the conclusion herein above dis-

cussed, it is unnecessary for us to consider what the original effect of the pooling agreement was.

The judgment of the trial court in granting a new trial is affirmed.

HALLEY, WILLIAMS, BLACKBIRD, and JACKSON, JJ., concur.

CORN, V. C. J., and CARLILE, JOHN-SON, JJ., dissent.

On Motion for Rehearing

Rehearing Denied.

JOHNSON, Justice (dissenting).

I respectfully dissent to the majority opinion for the reasons hereinafter set forth. It clearly appears to me that the judgment entered by the trial court at the conclusion of several hearings on January 28, 1954, in favor of defendants below was correct, and that the subsequent granting of plaintiff's motion for new trial was wrong, and was granted on insufficient grounds, amounting to an abuse of discretion, and that the order granting new trial should be reversed and the original judgment of the trial court in favor of defendants should be reinstated.

While in my opinion the case here on appeal could be properly disposed of by holding that the motion for new trial was granted on insufficient grounds expressly stated in the order granting such new trial, if the case is to be considered on its merits as is done in the majority opinion, the defendants were and are entitled on the record to prevail on the merits as first held by the trial court.

The sole question involved is as to the validity and effect of a written royalty contract duly executed, acknowledged and recorded in 1923 in the land records of Stephens County where the land here involved is located, the most material parts of which are set out in the majority opinion. The suit was to quiet title to, and cancel the royalty contract, as to 380 acres of land.

In copying the contract in the majority opinion three short paragraphs were eliminated as shown by stars. Those three paragraphs read as follows:

"That J. M. Littrell and his wife, Ella Littrell, shall be the owners of and be entitled to 37⅝ percent of the royalty accruing or to accrue from all oil and gas or either of them which may be produced from the above described lands, or from any part thereof.

"That Corbett Littrell and his wife, Pearl Littrell, shall be the owners of and entitled to 3¾ percent of the royalty accruing or to accrue from all oil and gas, or either of them, which may be produced from the above described lands or any part thereof.

"That James W. O'Quin and his wife, Lena O'Quin, shall be the owners of and entitled to 3¾ percent of the royalty accruing or to accrue from all oil and gas, or either of them, which may be produced from the above described lands or any part thereof."

With that addition the contract is displayed in full, and it was signed by each of the ten contracting parties shown in the first paragraph of the contract copied in the majority opinion. The contract was then properly acknowledged by each of the signing parties and recorded in the records of Stephens County.

The above quoted three paragraphs of the contract are material because they disclose that the completed contract separated and divided among the ten parties the whole 100 percent of the oil and gas royalty interests in and under the 380 acres here involved and in and under all of the 3100 acres of land owned by eight of the ten contracting parties.

These added three paragraphs are also material in view of the exact contentions of the parties.

The plaintiff, H. C. Pettigrew, contends that the quoted contract of May 10, 1923, is void, but that if the same is valid it was a pooling contract merely pooling the land

of the various parties, and that when the Garvins sold their 755 acres of land and no longer owned any land described in said contract that they then and thereby ceased to own and became divested of any royalty interest in all other land described in said contract, and that therefore Lucretia M. Garvin, at her death, owned no royalty interest in the 380 acres here involved, and her heirs did not inherit any such royalty interest from her.

The defendants contend that the contract of May 10, 1923, was not a pooling of the lands of the parties but was an agreement by which the parties thereto, for a valuable consideration recited therein, separated or divided only their royalty interest in all lands described in the contract, so that after the contract was executed each of the ten parties thereto owned the stated percentage of the royalty accruing or to accrue from oil or gas thereafter produced from each and all tracts of land described in the contract, regardless of future ownership of the surface of any such lands; that the percentage owned by Lucretia M. Garvin as shown by the contract was $12\frac{1}{6}$ percent; that she never conveyed or disposed of her said $12\frac{1}{6}$ percent as to the 380 acres of land here involved and continued to own the same until her death, and that her heirs inherited same and that these defendants now own their inherited portions thereof.

The question whether this contract was a pooling of *land* as contended by plaintiff or a contract *separating or dividing royalty interests* as contended by defendants is conclusively answered by reading this complete contract. It is thereby disclosed that it could not have been a contract pooling *lands* of the parties because two of the ten parties did not own any land, that is, J. W. O'Quin and Lena O'Quin. However, each of the ten parties did own oil and gas royalty interests, and it was those royalty interests, in the land itself, which was the subject and the only subject of this contract. Eight of the parties owned both land and royalty interests, while two of them owned no land but did own royalty

interests. That is conclusively shown when the entire contract is read.

The effect of the original judgment of the trial court in favor of the defendants was to hold the 1923 contract valid, and to have created and vested in J. R. Garvin and Lucretia M. Garvin, their respective heirs and assigns, each an undivided $12\frac{1}{6}$ percent of perpetual non-participating (in leasing or making leases, bonuses, downpayments and rentals) oil and gas royalty under all the lands described, and divided by the various parties, including the 380 acres here involved; that Lucretia M. Garvin died intestate in 1931, still owning her said interest and left as her heirs her husband, J. R. Garvin, and her children and grandchildren, the defendants; that J. R. Garvin thereafter, by quit claim deed, conveyed and released to plaintiff, the then owner of surface of the 380 acres, his original interest of $12\frac{1}{6}$ percent and the third of the Lucretia M. Garvin $12\frac{1}{6}$ percent interest which he had inherited from his said wife, Lucretia; and that therefore the defendants (as the other heirs of Lucretia M. Garvin) still owned $8\frac{1}{6}$ percent of the entire such oil and gas royalty in the 380 acres. The record shows, and it is clearly conceded by all parties, that Lucretia M. Garvin never conveyed or released her royalty interest and that she died owning same, and it is likewise conceded that her husband, J. R. Garvin, by his quit claim deed to the plaintiff Pettigrew on the 380 acres fully divested himself of his original interest as well as his interest inherited from his wife. Such original judgment was vacated by the trial court on granting plaintiff a new trial, from which this appeal was taken by defendants.

In my opinion it is clearly apparent from the entire record that the 1923 contract was and is fully valid and effective. The parties unquestionably intended to combine or divide and convey their royalty interests, not their land, so that each should share the good fortune of any and of all whose lands produced oil or gas, retaining unto themselves respectively their lands and the

rights to lease and to receive bonuses and delay rentals on their own respective tracts of land or to all the same. Also it is clearly apparent, accepting the words used in the contract in their ordinary sense or meaning, that the parties all intended, and in fact said and provided that such contract then and there permanently and perpetually vested such non-participating royalty rights or interests as to all the lands, including the 380 acres, in the respective parties, their heirs, executors, administrators and assigns, according to their specified proportions, until released or conveyed by them respectively; and that all the land, including the 380 acres, was thereafter burdened with such non-participating oil and gas royalty in perpetuity, just as though said parties had exchanged and recorded separate royalty deeds on the several tracts.

Such permanent or perpetual non-participating oil and gas royalty interests or estates are recognized whether created by conveyances, reservation or by contract as in the instant case. Summers Oil & Gas, Permanent Ed. Vol. 3A, Sec. 598, p. 197, and Sec. 599, p. 236; Victor H. Kulp, Oil & Gas Rights, p. 700, Sec. 10.85, Transfer of Rents, Royalties; Sullivan v. Sykes, 114 Okl. 87, 243 P. 722; Burns v. Bastien, 174 Okl. 40, 50 P.2d 377; Walker v. Renegar, 178 Okl. 82, 61 P.2d 666; Porter v. Warner-Caldwell Oil Co., 183 Okl. 1, 80 P.2d 252; Sykes v. Austin, 182 Okl. 299, 77 P.2d 719; McCullough v. Burks, 185 Okl. 502, 94 P.2d 541; McCullough v. Almach, 1941, 188 Okl. 434, 110 P.2d 295; Scott v. Brown, 1922, 71 Colo. 275, 206 P. 572; Callahan v. Martin, 1935, 3 Cal.2d 110, 43 P.2d 788, 101 A.L.R. 871; Macklin v. Brittain, 1940, 37 Cal.App.2d 120, 98 P.2d 749.

It is the duty of this Court to ascertain and carry out the intention of the parties, 15 Okl.St.Ann. § 152; 18 C.J. 252; 26 C.J.S. Deeds § 83; 16 Am.Jur. 531; Burns v. Bastien, 174 Okl. 40, 50 P.2d 377; Melton v. Sneed, 188 Okl. 388, 109 P.2d 509, and to adopt that construction if it is possible to do so, which will render the contract valid. 15 Okl.St.Ann. § 159; 18 C.J. 256; 26 C.J.S. Deeds § 82; 8 R.C.L.

1049; 16 Am.Jur. 529, Melton v. Sneed, supra. The present opinion fails to do this, and is based on a misinterpretation of the facts, and mis-application of authorities and on the use of inapplicable decisions.

The majority opinion does two things: (1) It argues that the 1923 contract was a simple pooling agreement of lands and was not a conveyance of a mineral interest because there does not appear a granting clause of any kind, was not an assignment of royalties in perpetuity because there was no word of assignment in it nor was any duration stated, and likened it to the simple pooling agreement in Snider v. Snider, 208 Okl. 231, 255 P.2d 273, personal in nature and not creating any vested or assignable interest, the Snider case being entirely inapplicable on the facts as I shall hereinafter show; and (2) holds that when the Garvins in 1930 conveyed their 755 acres of land to T. D. Wade that they thereby released their rights to own and be entitled to any oil and gas royalty from the 380 acres of Pettigrew-Littrell lands, under the authority of Hover v. Cleveland Oil Co., 150 Kan. 531, 95 P.2d 264, which is entirely inapplicable under the wording of our contract.

I will herein consider these matters in the above order.

First, as to point (1), Snider v. Snider, supra [208 Okl. 231, 255 P.2d 274], clearly does not apply here. The facts there were entirely different. The following quotation therefrom:

"A stipulation between father and son, as owners of undivided mineral interests in realty, for division of oil royalty payments on different basis than ownership, was not a conveyance of mineral interests or assignment of royalties in perpetuity, in absence of granting clause, any word or assignment, statement of duration, or clause making contract binding on parties' heirs, personal representatives or assigns, but a division order subject to termination by either party on notice, regardless of whether there was a con-

sideration therefor, and terminated on death of father, whose heirs, as owners of his interest in minerals, were not bound by stipulation."

clearly shows that the facts were dissimilar in all respects and that it furnishes no foundation whatever for suggesting that the contract here was insufficient in any respect. The instrument in the Snider case was no more than a division order and, of course, was personal between the father and son, did not extend any further, and terminated and ended upon the death of the father.

It was the intention of the parties to the 1923 contract, from the language and form thereof, to create permanent, vested, assignable oil and gas royalty interests and estates in themselves, their heirs, administrators and assigns, non-participating only as to leasing, bonuses and delay rentals as to the lands or mineral rights not theretofore owned by them respectively. In the Snider case, and also in Hover v. Cleveland Oil Co., supra, the agreements to share in the oil runs under presently producing leases were strictly personal in nature as to the parties to such agreements and did not extend to the heirs or assigns of the parties, and were in effect purely division orders and cannot be applicable to our case on any point. While here the 1923 contract expressly provides that the respective recipients, grantees or beneficiaries shall "be the owners of and entitled" to the agreed proportions of oil and gas royalty "accrued or to accrue from all oil and gas or either of them, which may be produced from the above described lands, or from any part thereof," but that this contract "shall in no wise interfere with or divest any party hereto of the right to separately lease his or her part of the lands hereinbefore described, for oil and gas purposes, and that the several interests set apart to each of the parties hereto, as hereinbefore provided, shall not attach to the * * * bonuses, down payments, and rentals accruing or to accrue, from any oil or gas lease, now existing or that may hereafter be executed," and

that "This contract, with all the rights and privileges thereof to inure to the benefit of our heirs, executors, administrators and assigns." So that our 1923 contract clearly intended to and did create in the respective new owners permanent, perpetual, non-participating oil and gas royalty interests or estates, in the parties to the contract respectively, being both assignable and inheritable.

It is apparent that by referring to the 1923 contract as a "pooling agreement" in the record and briefs, counsel for defendants did not intend nor agree thereby that such contract was such an instrument as is involved in Snider v. Snider, supra, or Hover v. Cleveland Oil Co., supra; that was and is the identical position they were there and are here litigating against; such references were clearly for the purpose of identification of the 1923 contract, rather than agreements as to its nature or legal effect; and the majority opinion, as I read it, improperly assigns importance to such designations by counsel, which are not evidence; the legal effect and nature of the contract should rather be judged by and from its own provisions and surrounding evidence, if necessary to resort to same. To do otherwise would be inequitable and improper.

Neither can I agree that the 1923 contract is invalid or insufficient because it does not contain sufficient words of conveyance, granting clause or assignment. In 58 C.J.S. Mines and Minerals § 154, p. 309, reference is made to use of the words "grant, bargain, and sell" in connection with minerals, and it is further stated:

"Such technical words or their equivalent, however, are not necessary to pass the title to minerals in place if from the language of the whole instrument the intention to sell is apparent. * * * technical words are not necessary and effect will be given to whatever language discloses the intent to transfer."

That is the rule in Oklahoma, though there is no reported case in Oklahoma

exactly in point with the situation here. Lowery v. Westheimer, 58 Okl. 560, 160 p. 496, states:

"In construing words of grant contained in a deed, where the words are doubtful or ambiguous, the language being that of the grantor, all doubtful words are construed most strongly against him and most favorably and beneficially for the grantee. A construction will be avoided, if possible, which will render the instrument frivolous and ineffectual; it being presumed that the parties * * * intended the deed to have some operation."

Walker v. Renegar, 178 Okl. 82, 61 P.2d 666, states:

"Statute providing form for warranty and quit claim deeds is directory only and use of exact words or language of statute is unnecessary, but words of like import may be used."

"Words 'set over and assign' held sufficient to transfer title in conveyance of realty, where instrument in writing is otherwise sufficient."

The granting words there used were "set over and assign," but there was no extension of the grant to the heirs, executors, administrators and assigns as is in the 1923 contract here which makes the words of grant even stronger here than there, and this Court held that the "agreement" from Walker to Renegar was entirely sufficient as a conveyance of real estate and to pass title absolutely to Renegar, and by implication to his heirs, administrators, executors and assigns.

Scott v. Brown, 71 Colo. 275, 206 P. 572, on sufficiency of words of grant is almost identical with the words used here, except that the words here are even more and stronger than there. In the Scott case the facts were that:

" * * * Plaintiff, holder of a treasurer's deed on certain land, and defendant, owner of a deed of trust on the same land, contracted that defendant should perfect title to the land, and

that 'when title is perfected and from this date' each consented with the other to be *equal owners* of the land, the agreement was in effect a conveyance by each to the other of one-half his interest * * *."

In the body of the opinion it is further stated:

"The contract is not a mere contract to convey; it is, in effect, a conveyance each to the other of one-half his or her interest. No other interpretation can be given to the words: 'That when title is perfected and from this date each consents with the other to be equal owners of said land.' "

In the 1923 contract it was provided that Mr. and Mrs. Garvin "shall be the owners of and entitled to" their agreed proportion of the royalty under the 380 acres, and further along in the contract reference is made to "the several interests set apart to each of the parties hereto," and then there is the concluding provision in the contract that "This contract, with all the rights and privileges thereto to inure to the benefit of our heirs, executors, administrators and assigns." Certainly these are sufficient words of grant and of assignment and of transfer, considering the contract in its entirety.

The suggestion in the majority opinion that the 1923 contract was not an assignment of royalties in perpetuity because no duration thereof stated therein is without merit. None need be stated in a deed. And it is apparent from the terms and provisions and clear intentions of the parties to the 1923 contract that they fully intended that the contract creating the separate royalty interests be perpetual in duration is presumed unless the contrary is proven. 16 Okl.St.Ann. § 29, provides:

"Every estate in land which shall be granted, conveyed or demised by deed or will shall be deemed an estate in fee simple and of inheritance, unless limited by express words."

Also see Herndon v. Shawnee Nat. Bank, 105 Okl. 207, 232 p. 432, to the same effect.

Recital near the end of the 1923 contract to the effect that "each party hereto disclaims any interest in that portion of the above described lands belonging to each of the other parties hereto" clearly means and refers to the lands themselves, for agricultural or grazing or other surface uses and does not indicate that the parties by the use of such clause intended to abrogate the former provisions of the contract as to royalty interests created thereby. Same is taken from context and does not indicate, as considered by the majority opinion, that same amounted to a disclaimer of oil and gas or royalty rights in perpetuity or specifically created by the contract, which had no other purpose than to create and vest such rights.

I now pass to the holding by the majority opinion (2) that after Mr. and Mrs. Garvin in 1930 conveyed their 755 acres of land to Wade that they had no further rights in the royalty under the 380 acres here involved to pass on to the defendant heirs of Mrs. Garvin upon her death. This is the reason and basis upon which it is held by the majority opinion that the defendants did not inherit anything from Mrs. Garvin.

Having reached the definite conclusion that what the parties to the 1923 contract clearly intended and accomplished was to create valid and effective and vested nonparticipating interests or estates in the oil and gas royalty according to the provided interest or proportions, it naturally follows that the only way they could be divested of same was by some release or conveyance by each respective party as to each respective piece or tract of the land included in the 1923 contract. Their conveyance of the 755 acres of land without reservation as to mineral or royalty rights, of course, deprived them of any further mineral or royalty rights under such 755 acres, but the conveyance of that 755 acres of land to Wade did not in any manner affect their continued ownership of their proportionate parts of the royalty interest vested in them by the 1923 contract in the 380 acres of the Pettigrew-Littrell lands

involved in this case, and such sale and conveyance of the said 755 acres of land by them is not material in this case, and the majority opinion was and is wrong in so holding.

I am convinced that my view is supported by responsible authority, and that in fact there is no authority to the contrary.

In Tanner v. Title Ins. & Trust Co., 20 Cal.2d 814, 129 P.2d 383, 387, it was held in the body of the opinion as follows:

"Although the cases clearly establish that the percentage of the royalty reserved by a lessor in oil produced from *his* land passes to a grantee of the fee as an incident of the conveyance (see cases collected in note 94 A.L.R. 660), except as such rights are reserved by the deed, the incorporeal hereditament owned by the grantor in the oil produced from the *land of the colessors,* existing in gross, obviously does not follow the conveyance of the lessor's land, but *can only be conveyed by a specific transfer of that interest. * * *"* (Emphasis added.)

To the same effect see Friedrich v. Roland, 95 Cal.App.2d 543, 213 P.2d 423; Brown v. Copp, 105 Cal.App.2d 1, 232 P.2d 868; Howard v. General Petroleum Corp., 108 Cal.App.2d 25, 238 P.2d 145, and Agajanian v. Cuccio, 141 Cal.App.2d 828, 297 P.2d 755.

The rule is well stated in Summers Oil & Gas, Permanent Edition, Vol. 3A, Sec. 612, p. 489, et seq.

The Kansas case of Hover v. Cleveland Oil Co., supra, relied on in the majority opinion is not applicable here. The written instrument there involved is clearly like that in Snider v. Snider, supra; B. owned the east half of block 15; H. owned all of block 14 of Eureka, Kansas, adjoining properties separated only by a street; their written agreement was entered into at the same time both gave separate oil leases to an oil company for drilling purposes, and at the same time both H. and B. entered into a separate drilling contract with the

oil company to the effect that it would drill a test well on the half block owned by B. and in the event it turned out to be a commercial well a second well should be drilled on the full block owned by H. H. and B. at the same time made the separate agreement that any and all royalties which should inure to them from oil or gas produced on their respective city properties *leased to the R. oil company* should be *pooled* and apportioned between them in accordance with their relative acreages, 2/3 to H. and 1/3 to B., *"until changed by the parties hereto."* There was production on the property of B. but none on the H. property. The court held that when H. sold his property, block 14, that same terminated this personal, temporary agreement and arrangement, and that H. thereafter was not entitled to any of the royalty from production from the property of B. Clearly this case is not in point on the facts and therefore fails to support the theory of the majority opinion that the sale by the Garvins of their 755 acres of land released their royalty interests vested in the 380 acres involved here.

Though the 1923 contract on its face, and considering nothing further, is clearly sufficient as an instrument granting, conveying, creating and vesting the royalty interests as claimed by the defendants, yet if that can be doubted for any reason, there are other cogent reasons for holding that the original parties clearly intended for it to be so. One reason is that the 380 acres involved here was owned jointly by Thomas Pettigrew and his wife, Anna, and J. M. Littrell and his wife, Ella, at the time the 1923 contract was made, and later when such land was conveyed by J. M. and Ella Littrell to Thomas and Anna Pettigrew, the conveyance recited:

"It is expressly understood and agreed that this conveyance affects the surface right only, the mineral rights having heretofore been disposed of by a contract between the parties hereto and others as appears of record in the office of the County Clerk of Stephens County, Oklahoma;"

and still later when title to such 380 acres passed from Thomas and Anna Pettigrew to H. C. Pettigrew, their son, plaintiff herein, the conveyance provided:

"This deed is given subject to any valid contract or lease now on record against this land or which may be placed of record by me during my lifetime."

thereby showing that the Littrells, the senior Pettigrews, and the present plaintiff all recognized at those times the existence and validity of the 1923 contract, and that the present plaintiff took title to such property burdened with such royalty contract under which the defendants clearly held and now hold the rights and royalty they claim.

I believe it is clearly pointed out in the original brief of the defendants (plaintiffs in error) that the trial court's specifically assigned reasons for vacating the general judgment rendered by it in favor of defendants, to-wit, that the 1923 royalty contract is "void and ineffective for any purpose under the rule and holding in Lathrop v. Eyestone, 170 Kan. 419, 227 P.2d 136, and because such contract was and is ambiguous and uncertain and violates the rule against perpetuities and, too, remote vesting" were insufficient grounds and constituted an abuse of discretion on the part of the trial court. None of these reasons seem now to be claimed or relied on to uphold the trial court in granting new trial, or to invalidate such contract. Neither does Lathrop v. Eyestone, supra, in any way figure in the destruction of the 1923 contract. I have concluded that it is not in anywise applicable, and I observe that it is not in any manner relied on in the majority opinion to uphold the granting of the new trial.

Be that as it may, I am also thoroughly convinced that considering the case upon its merits, that the defendants' claim under and upon the 1923 royalty contract are yet fully effective as to 8⅓ percent of the nonparticipating oil and gas royalty; that such contract is yet valid and effective except as to the parts of such royalty released or con-

veyed; and that the order of the trial court granting new trial should be reversed and the trial court's original judgment in favor of the defendants should be fully reinstated.

For these reasons, I respectfully dissent from the majority opinion.